# United States District Court
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| PERFORMANCE PULSATION CONTROL, INC. | § § § | |
| v. | § § | Civil Action No. 4:17-CV-00450 |
| | § | Judge Mazzant |
| SIGMA DRILLING TECHNOLOGIES, LLC, INTREPID CONSULTING, LLC, JUSTIN MANLEY, ALLISON MANLEY, WILLIAM GARFIELD, and PAMELA GOEHRING-GARFIELD | § § § § § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Sigma Drilling Technologies, LLC ("Sigma"), Intrepid Consulting, LLC ("Intrepid"), Justin Manley ("J. Manley"), Allison Manley[1] ("A. Manley"), William Garfield ("W. Garfield"), and Pamela Goehring-Garfield's[2] ("P. Garfield") (collectively "Defendants") Rule 12(b)(1) and 12(b)(6) Motion to Dismiss Plaintiff's First Amended Complaint (Dkt. #19). After reviewing the relevant pleadings and motion, the Court finds the motion should be denied.

## BACKGROUND

Performance Pulsation Control, Inc. ("PPC") specializes in the design and production of pulsation dampeners for pumps used in oil, gas, and mining operations. Such pumps often experience hydraulic shocks and pressure gaps that can damage them over time. PPC's pulsation dampeners act like shock absorbers against these disturbances to protect pipe system components and promote pump efficiency, safety, and reliability.

---

[1] A. Manley is a former Performance Pulsation Control Employee and J. Manley's spouse. A. Manley is a Defendant in this action to the degree that she engaged in the alleged conduct with J. Manley and to the extent that her community property is subject to this action.
[2] P. Garfield is W. Garfield's spouse and is a Defendant in this action to the extent that she maintains ownership in community property which is subject to this action.

Defendant J. Manley worked at PPC from 2012 to 2016. In 2012, J. Manley worked on a team that developed certain pulsation dampeners and related technologies. In 2013, J. Manley became PPC's Sales & Marketing Manager. As such, J. Manley crafted sales and marketing strategies, identified target markets, assisted with new product development, and promoted new product introductions.

In 2014, J. Manley joined the research and development team for PPC's Project 1958, the Wave Blocker—System Orifice ("Acoustic Assassin") and Projects 1980 and 1982—PD 05-15000 (the "PD Style Dampeners"). During that time, J. Manley signed a confidentiality agreement with PPC that covered design drawing and specifications, fixtures and fabrication techniques, computer programs and codes, customer marketing strategies, pending projects and proposals, and research and development strategies. J. Manley also agreed to not compete with PPC. In 2016, PPC terminated J. Manley. In a subsequent letter, PPC reminded J. Manley of his enduring obligation to guard PPC's confidential, proprietary, and trade secret business information.

J. Manley formed Sigma in 2014, listing himself as its managing member and registered agent. Sigma created a website in 2014 featuring the following products—the Charge Free Dampening System, the Charge Free Dampener, the Charger Free Conversion Kit, and the Acoustic Assassin. In 2010, J. Manley also formed Intrepid, naming himself as its owner and director.

In 2016, PPC determined that J. Manley, individually and as managing member of Sigma and/or as owner and director of Intrepid, along with former PPC employee W. Garfield, were using its confidential and proprietary information. PPC surmised that J. Manley and W. Garfield were using its proprietary information to market and sell pulsation control products and services to oil and gas clients including PPC's current customers. PPC further deduced that J. Manley and W. Garfield were soliciting its vendors.

On June 27, 2017, PPC sued Defendants for (1) declaratory relief as to ownership of trade secrets; (2) declaratory relief as to ownership of patent rights; (3) declaratory relief as to derivative works under the Copyright Act (17 U.S.C. § 101, et. seq.); (4) declaratory relief as to work-for-hire copyright ownership rights under the Copyright Act (17 U.S.C. § 101, et. seq.); (5) trade secret misappropriation against J. Manley, A. Manley, W. Garfield, Sigma, and Intrepid; (6) civil theft against J. Manley, A. Manley, W. Garfield, Sigma, and Intrepid; (7) conversion against J. Manley, W. Garfield, Sigma, and Intrepid; (8) unfair competition against J. Manley, W. Garfield, Sigma, and Intrepid; (9) breach of contract against J. Manley; (10) breach of fiduciary duty against J. Manley, (11) alter ego against J. Manley, Sigma, and Intrepid; and (12) requested relief in the form of a preliminary and permanent injunction (Dkt. #1). On August 10, 2017, PPC filed its First Amended Complaint, dropping its claim for declaratory relief as to ownership of patent rights (Dkt. #1 at p. 15; Dkt. #17). On August 17, 2017, Defendants filed a Rule 12(b)(1) and 12(b)(6) Motion to Dismiss Plaintiff's First Amended Complaint (Dkt. #19). On August 31, 2017, PPC filed its response (Dkt. #28). On September 7, 2017, Defendants filed their reply (Dkt. #30).

## LEGAL STANDARD

**Motion to Dismiss for Lack of Subject Matter Jurisdiction**

Federal Rule of Civil Procedure 12(b)(1) authorizes dismissal of a case for lack of subject matter jurisdiction when the district court lacks statutory and constitutional power to adjudicate the case. *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998). If a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the Court will consider the jurisdictional attack under Rule 12(b)(1) before addressing any attack on the legal merits. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

In deciding the motion, the Court may consider "(1) the complaint alone; (2) the complaint supplemented by the undisputed facts evidenced in the record; or (3) the complaint supplemented

by undisputed facts plus the [C]ourt's resolution of disputed facts." *Lane v. Halliburton*, 529 F.3d 548, 557 (5th Cir. 2008) (quoting *Barrera-Montenegro v. United States*, 74 F.3d 657, 659 (5th Cir. 1996)). The Court will accept as true all well-pleaded allegations set forth in the complaint and construe those allegations in the light most favorable to the plaintiff. *Truman v. United States*, 26 F.3d 592, 594 (5th Cir. 1994). Once a defendant files a motion to dismiss under Rule 12(b)(1) and challenges jurisdiction, the party invoking jurisdiction has the burden to establish subject matter jurisdiction. *See Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980). The Court will grant a motion to dismiss for lack of subject matter jurisdiction only if it appears certain that the claimant cannot prove a plausible set of facts to support a claim that would entitle it to relief. *Lane*, 529 F.3d at 557.

If a district court has original jurisdiction—i.e. federal question jurisdiction—over a claim it may wield jurisdiction over "all other claims that are so related to the claims in the action with such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C.A. § 1367(a). "Federal question jurisdiction 'exists in a declaratory judgment action if the plaintiff has alleged facts in a well-pleaded complaint which demonstrate that the defendant could file a coercive action arising under federal law.'" *Stuart Weitzmann, LLC v. Microcomputer Res., Inc.*, 543 F.3d 859, 862 (11th Cir. 2008) *quoting Household Bank*, 320 F.3d 1249, 1251 (11th Cir. 2003). A civil action to obtain a remedy expressly granted by the Copyright Act or to construe the Copyright Act arises under federal copyright law. *See Goodman v. Lee*, 815 F.2d 1030, 1031 (5th Cir. 1987); *see also Cmty. for Creative Non-Violence v. Reid*, 490 U.S. 730, 732, 109 S. Ct. 2166, 2168–60, 104 L. Ed. 2d 811 (1989) (explaining that a dispute over work-for-hire ownership requires a court to construe the Copyright Act); *Scandinavian Satellite Sys., AS v. Prime TV Ltd.*, 291 F.3d 839, 845 (D.C. Cir. 2002) ("[A] dispute that turns on whether a copyrighted work was created independently

4

or as a "work made for hire" is an *ownership dispute* that unquestionably arises under the Copyright Act.") A copyright need not be registered to satisfy a court's subject matter jurisdiction. *See Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 169, 130 S. Ct. 1237, 1248, 176 L. Ed. 2d 18 (2010).

**Motion to Dismiss for Failure to State a Claim**

The Federal Rules of Civil Procedure require that each claim in a complaint include a "short and plain statement . . . showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Each claim must include enough factual allegations "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

A Rule 12(b)(6) motion allows a party to move for dismissal of an action when the complaint fails to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). When considering a motion to dismiss under Rule 12(b)(6), the Court must accept as true all well-pleaded facts in plaintiff's complaint and view those facts in the light most favorable to the plaintiff. *Bowlby v. City of Aberdeen*, 681 F.3d 215, 219 (5th Cir. 2012). The Court may consider "the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010). The Court must then determine whether the complaint states a claim for relief that is plausible on its face. "'A claim has facial plausibility when the plaintiff pleads factual content that allows the [C]ourt to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "But where the well-pleaded facts do not permit the [C]ourt to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)).

In *Iqbal*, the Supreme Court established a two-step approach for assessing the sufficiency of a complaint in the context of a Rule 12(b)(6) motion. First, the Court should identify and disregard conclusory allegations, for they are "not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 664. Second, the Court "consider[s] the factual allegations in [the complaint] to determine if they plausibly suggest an entitlement to relief." *Id.* "This standard 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary claims or elements.'" *Morgan v. Hubert*, 335 F. App'x 466, 470 (5th Cir. 2009) (citation omitted). This evaluation will "be a context-specific task that requires the reviewing [C]ourt to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570).

## ANALYSIS

Defendants argue that PPC's claims wholly arise under state law, thwarting the Court's federal question jurisdiction. Defendants aver that PPC cannot identify any intellectual property to invoke the Court's federal question jurisdiction (Dkt. #19 at p. 1). But PPC claims that the Court has exclusive jurisdiction over the cause of action under the "derivative works" and "work-for-hire" doctrines of the Copyright Act (Dkt. #28 at p. 7). A derivative work is a new product that includes features of a pre-existing copyrighted work. 17 U.S.C. § 101. A work-for-hire product is a copyrightable work created by an employee as part of his or her job. *JustMed, Inc. v. Byce*, 600 F.3d 1118, 1125 (9th Cir. 2010).

PPC's claims for copyright ownership based on the "work-for-hire" and "derivative works" doctrines squarely arise under the Copyright Act and invoke the Court's federal question jurisdiction. A claim "arises under" the Copyright Act for purposes of the Court's subject matter

jurisdiction if and only if "the complaint is for a remedy expressly granted by the Act ... or asserts a claim requiring constructing of the Act, ... or, at the very least and perhaps more doubtfully, presents a case where a distinctive policy of the Act requires that federal principles control the disposition of the claim," (the "*T.B. Harms* Test"). *See Goodman*, 815 F.2d at 1031 (quoting *T.B. Harms Co., v. Eliscu*, 339 F.2d 838, 828 (2nd Cir. 1964)); *see also Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Tr. for S. Cal.*, 463 U.S. 1, 9, 103 S. Ct. 2841, 2846, 77 L. Ed. 2d 420 (1983) ("We have often held that a case 'arose under' federal law where the vindication of a right under state law necessarily turned on some construction of federal law…"); *Royal v. Leading Edge Prods., Inc.*, 833 F.2d 1, 2–3 (1st Cir.1987) (recognizing that an action "arises under" the Copyright Act if the complaint is for a remedy expressly granted by the Act or where a distinctive policy of the Act obliges federal principles to control a claim's management and subsequently denying federal question jurisdiction where the work-for-hire doctrine was "at best only tangentially implicated" by a claim arising under state contract law); *Bassett v. Mashantucket Pequot Tribe*, 204 F.3d 343, 355 (2d Cir. 2000) (recognizing that a cause of action arises under the Copyright Act only if it is for a remedy expressly granted by the Act or requires construction of the Act—i.e. the *T.B. Harms* Test); *Arthur Young & Co. v. City of Richmond*, 895 F.2d 967, 969–70 (4th Cir. 1990) (recognizing the *T.B. Harms* Test as the touchstone for deciding federal question jurisdiction over Copyright Act claims); *Vestron, Inc. v. Home Box Office Inc.*, 839 F.2d 1380, 1381 (9th Cir. 1988) (recognizing the *T.B. Harms* Test); *MCA Television Ltd. v. Pub. Interest Corp.*, 171 F.3d 1265, 1269–70 (11th Cir. 1999) (recognizing the *T.B. Harms* Test).

PPC filed this suit seeking "declaratory judgment of ownership by PPC of certain copyrights, patent rights, and trade secrets, as well as a suit for injunctive relief and damages against Defendants for misappropriation of PPC's trade secrets under Texas common law." (Dkt. #17 at p. 1–2.) PPC claims it "conceived, invented, created and own[s] the copyrights and

intellectual property embodying the substance of the Applications and any other works derived from those copyrights, including the CFC Kit, the Acoustic Assassin, and any such other products derived from these products are, therefore, a derivative work based upon such prior materials, which is subject to PPC's exclusive ownership and control under federal copyright law." (Dkt. #17 at p. 15). PPC further alleged it is "entitled to a declaration that it owns all copyrights pursuant to the Copyright Act's work-for-hire doctrine." (Dkt. #17 at p. 18). Such claims rely on privileges provided by the Copyright Act—derivative work and work-for-hire ownerships rights—and require the Court to construe the Act. In turn, they arise under the Copyright Act for subject matter jurisdiction purposes.

The Court has jurisdiction over PPC's declaratory judgment actions as they arise from claims that could stand alone as causes of action—i.e. PPC's claims for Copyright Ownership Rights for derivative works and work-for-hire under the Copyright Act. *See Stuart Weitzmann, LLC*, 542 F.3d at 862 (for a court to determine whether it has subject matter jurisdiction over a declaratory judgment action, it must ask "'whether, absent the availability of declaratory relief, the instant case could nevertheless have been brought to federal court.'")

The Court has supplemental jurisdiction over PPC's remaining claims. These actions arise from the same operative facts as PPC's Copyright claims—J. Manley and W. Garfield's alleged misappropriation of trade secrets and proprietary and confidential information as PPC's employees (Dkt. #17 at p. 2). *See* 28 U.S.C.A. § 1367(a). This entire matter revolves around PPC's seeking "a declaration from this Court that [it] is the owner of certain copyrights, trade secrets, designs, drawings, and patent applications currently being misappropriated by Defendants to actively compete with PPC and that Defendants are infringing [its] rights associated with such technology." (Dkt. #17 at p. 2). Thus, PPC's several claims spring from a common nucleus of operative fact and fall within the Court's supplemental jurisdiction.

Defendants argue that PPC failed to state a claim upon which relief can be granted. PPC counters that it plausibly pleaded several bases for redress and relief. The question is "'whether in the light most favorable to the plaintiff and with every doubt resolved in his behalf, the complaint states any valid claim for relief.'" *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000). After reviewing the current complaint, the motion to dismiss, the response, the reply, and the sur-reply, the Court finds that PPC has stated plausible claims for purposes of defeating a Rule 12(b)(6) motion to dismiss.

## CONCLUSION

It is hereby **ORDERED** that Defendants' Rule 12(b)(1) and 12(b)(6) Motion to Dismiss Plaintiff's First Amended Complaint is **DENIED**.

**SIGNED this 20th day of November, 2017.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE