UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| PERFORMANCE PULSATION CONTROL, INC. | § § § | |
| Plaintiff, | § § | Civil Action No. 4:17-cv-00450 |
| v. | § § | |
| SIGMA DRILLING TECHNOLOGIES, LLC, INTREPID CONSULTING, LLC, JUSTIN MANLEY, ALLISON MANLEY, WILLIAM GARFIELD, and PAMELA GOEHRING-GARFIELD | § § § § § § | Judge: Hon. Amos L. Mazzant, III |
| Defendants. | | |

_____

**SIGMA DRILLING TECHNOLOGIES, LLC'S AND JUSTIN MANLEY'S ORIGINAL COUNTERCLAIM**
_____

Defendants and Counter-Claimants Sigma Drilling Technologies, LLC ("Sigma") and Justin Manley ("Manley") file this Counterclaim seeking declaratory and injunctive relief against Plaintiff and Counter-Defendant Performance Pulsation Control, Inc. ("Plaintiff" of "PPC") pursuant to Rule 13 of the Federal Rules of Civil Procedure and respectfully show the Court as follows:

## I.  BACKGROUND

1. This Original Counterclaim is filed subject to leave from the Court, as requested in the Motion for Leave filed concurrently herewith.

2. Sigma and Manley file this Original Counterclaim to conclusively establish ownership over their intellectual property and preclude PPC from manufacturing and selling the unique and innovative products created by Manley and sold by Sigma. Sigma sells unique component parts for oilfield drilling products. PPC sells different products, generally used in the

same industry. Sigma sells products invented by Justin Manley, a former PPC employee. Based on Manley's previous employment relationship with PPC, PPC claims it is entitled to ownership over Manley's unique inventions.

3. Sigma's products implicate two types of intellectual property—patents and trade secrets. Sigma's products are patent-protected, as explained in PPC's petition, precluding PPC from manufacturing and selling those products. Sigma manufactures its products using proprietary trade secret designs and manufacturing specifications. Although patent law precludes companies like PPC from manufacturing and selling Sigma's products, Sigma's confidential manufacturing specifications and designs ensure that PPC cannot violate the law and manufacture and sell Sigma's unique products.

4. Manley signed no agreement entitling PPC to ownership over any intellectual property and did not create any intellectual property in the course and scope of his employment with PPC. Manley did not use any of PPC's confidential information or trade secrets. In fact, to Manley's knowledge, PPC has never created its own proprietary products or designs. Manley's inventions, sold by Sigma, are unique and entirely different than anything manufactured or sold by PPC. Manley owed no duty to PPC to disclose or otherwise give PPC Manley's own unique inventions. PPC's own employee handbook explicitly allowed PPC's employees to work outside of their employment with PPC. By this Counterclaim, Manley and Sigma seek a declaration that the "copyrights, trade secrets, designs, drawings, and patent applications" owned by Manley and Sigma, to which PPC has asserted ownership do not belong to PPC, as well as injunctive relief precluding PPC from manufacturing and selling the unique products at issue.

## II. PARTIES

5. Counter-Claimant and Defendant Sigma is a Texas Corporation with its principal place of business in Collin County, Texas.

6. Counter-Claimant and Defendant Justin Manley ("Manley") is an individual residing in Collin County, Texas.

7. Counter-Defendant and Plaintiff Performance Pulsation Control, Inc. is a Texas corporation with its principal place of business in Collin County, Texas and may be properly served with this Counterclaim through their counsel, John T. Palter, Kimberly M. Sims, and Nathaniel Martinez of the law firm PALTER STOKLEY SIMS, PLLC, 8115 Preston Road, Suite 600, Dallas, Texas, 75225.

### III. JURISDICTION AND VENUE

8. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1367 because the counterclaims at issue arise out of the same operative facts as PPC's claims. [Dkt. No. 17].

9. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because all or substantially all of the events giving rise to this claim occurred in Collin County, Texas.

### IV.   FACTS

10. Manley began working for PPC on an at-will basis on June 15, 2012. PPC hired Manley as a Director of Sales and Marketing to perform and manage sales tasks, not to design or invent products or trade secrets for PPC. PPC did not have Manley sign a non-competition agreement, an assignment of inventions or intellectual property, or a global confidentiality agreement.

11. Indeed, PPC's employee handbook explicitly permitted PPC employees to maintain outside employment as long as the employees continued to meet the standards of their jobs, and as long as the outside employment did not constitute a conflict of interest:

> 110 Outside Employment
>
> Effective Date: 12/1/2010
>
> Employees may hold outside jobs as long as they meet the performance standards of their job with PPC. All employees will

> be judged by the same performance standards and will be subject to PPC's scheduling demands, regardless of any existing outside work requirements.
>
> If PPC determines that an employee's outside work interferes with performance or the ability to meet the requirements of PPC as they are modified from time to time, the employee may be asked to terminate the outside employment if he or she wishes to remain with PPC.
>
> Outside employment that constitutes a conflict of interest is prohibited. Employees may not receive any income or material gain from individuals outside PPC for materials produced or services rendered while performing their jobs.

12. Manley was hired by PPC to perform and manage sales tasks. Manley was not hired to design, develop, or invent new products. During the course of his employment, Manley became familiar generally with the pulsation control industry.

13. During his employment with PPC, but on his personal time during non-working hours, Manley developed an invention. In addition to not developing his invention on company time, Manley did not use company labor or resources at any point in relation to his invention. As a solution to an industry-wide wear-and-tear replacement issue with standard gas-charged dampener diaphragms, Manley invented a new product that replaces the diaphragms in the industry-standard pressure vessels. PPC does not sell this product or anything resembling Manley's invention.

14. To facilitate the eventual marketing and sale of his invention, and consistent with Section 110 of PPC's Handbook, Manley formed Sigma. Sigma sells a patented product named the Charge Free Conversion Kit (the "CFC Kit"). Sigma also sells other products that are different and not derived from PPC's products. These products are identified in PPC's live petition [Dkt. 17] and at sigmadrillingtech.com.

15. PPC sells pulsation control vessels, which control and mitigate vibration and pressure fluctuations on oil drilling rigs. PPC sells industry standard pulsation control products.

PPC's products are forged out of steel using basic mechanical engineering principles during manufacturing, compliant with American Society of Mechanical Engineers ("ASME") code standards. PPC's pressure control vessels are then outfitted with an industry standard dampener diaphragm, purchased from a separate oilfield supply company. These "dampener diaphragms" wear out and must be replaced through regular maintenance.

16. PPC does not design or manufacture any dampener diaphragms, it simply purchases an off-the-shelf industry standard product and inserts that diaphragm into PPC's products. Manley created the CFC Kit to replace standard dampener diaphragms. Manley's invention is superior to standard diaphragms because it does not wear out and require regular replacement. Manley's patented CFC Kit utilizes a molded basket with a layered system of compression discs to dampen pressure. The CFC Kit's discs are specially molded using proprietary and confidential technology, and are designed to compress in a pre-set pressure range. The CFC Kit fits into industry-standard pulsation control vessels.

17. On April 7, 2016, with no explanation, PPC terminated Manley's employment. As part of that termination, PPC offered Manley a severance package, but it was not a standard severance package. Instead, PPC attempted to gain after termination what it never had during Manley's employment. Specifically, PPC demanded, inter alia, a four year non-solicitation and non-competition prohibition covering 21 states, and an assignment of patent rights to the United States, including a power of attorney for PPC. On April 13, 2016, Manley rejected the severance offer on those onerous terms.

18. As a result, on April 19, 2016, PPC began to harass Manley through its attorneys. With no provocation or justification, PPC's attorneys sent a certified letter and email to Manley purporting to remind him of confidentiality obligations contained in PPC's Handbook. Despite the fact that the policies in the Handbook pertain only to an employee's term of employment,

PPC's attorneys characterized the Handbook as imposing "continuing obligations." The letter went on to demand that Manley sign a sworn affidavit, drafted by PPC's attorneys, regarding the return, destruction, and communication of PPC information, supposedly "[i]n accordance with [his] continuing obligations to [PPC]."

19. Because Manley had no continuing obligations to PPC, and because he was under no obligation, weeks after his termination, to sign affidavits for PPC's benefit, Manley declined to execute PPC's affidavit. Manley did, however, send an email response through his counsel confirming that "[t]o the best of Mr. Manley's knowledge, he has complied with all of his obligations to PPC, including with respect to confidential information, and has not done anything improper." Manley's counsel requested that:

> "If you are in possession of any information to the contrary, please let me know. Also, if you are aware of any obligation Mr. Manley is under to sign the affidavit attached to Mr. Palter's letter, or any other affidavit, please let me know. Likewise, if you are in possession of any information that Mr. Manley has done something improper in relation to PPC in any respect, please let me know."

PPC sent no reply and provided no basis for sending its letter, and now, long after his termination, PPC continues its harassment of Manley through this lawsuit.

20. Manley had the right to patent his inventions and form Sigma during the course of his employment with PPC and his decisions to do so are not actionable by PPC. Manley did not appropriate PPC's trade secrets, solicit PPC's customers, solicit the departure of PPC's employees, or carry away confidential information, such as customer lists, while pursuing business endeavors outside of the course of his employment with PPC.

## V. CAUSES OF ACTION

**I.  Declaratory Relief pursuant to 28 U.S.C. § 2201 as to ownership of Sigma's and Manley's intellectual property.**

21. Sigma and Manley re-allege and incorporate by reference paragraphs 8-20 as if fully set forth herein.

22. PPC has no colorable claim to ownership over any intellectual property created by Manley or Sigma during Manley's employment with PPC or afterward. Manley created his intellectual property on his personal time during non-working hours. In addition to not developing his intellectual property during the course of his employment with PPC, Manley did not use company labor or resources at any point in relation to his intellectual property.

23. Despite these facts, PPC asserts ownership over trade secrets and intellectual property contained within (1) Manley's patent applications and (2) Manley's inventions. PPC also continues to assert that Manley and Sigma owe continuing obligations to PPC, despite the absence of any legal basis from which such an obligation could derive.

24. There is an actual controversy within the meaning of 28 U.S.C. §§ 2201 and 2202 regarding the ownership of the intellectual property identified herein and Justin Manley's obligations (or lack thereof) to PPC.

25. Therefore, Sigma and Manley request a declaration that, pursuant to 28 U.S.C. § 2201, PPC has no ownership or licensing rights to the intellectual property related to products sold by Sigma. Manley further requests a declaration that Manley owes no continuing obligations to PPC resulting from Manley's previous employment with PPC.

SIGMA DRILLING TECHNOLOGIES, LLC'S AND JUSTIN MANLEY'S ORIGINAL COUNTERCLAIM    Page 7
1369702 2530.1

> **II.  Permanent and preliminary Injunctive Relief pursuant to Rule 65 of the Federal Rules of Civil Procedure, 18 U.S.C. § 1836, and Texas Civil Practice and Remedies Code § 65.011 as to the production and sell of Defendants' products.**

26. Sigma and Manley re-allege and incorporate by reference paragraphs 8-20 as if fully set forth herein.

27. Manley is the rightful owner of the intellectual property that forms the basis of this lawsuit and sells products embodying that intellectual property through Sigma. Manley and Sigma seek a declaration from this court establishing that PPC has no ownership rights over the intellectual property at issue.

28. Manley's and Sigma's products are intended for use in interstate commerce.

29. Upon information and belief, PPC intends to manufacture and sell Manley's and Sigma's products, regardless of ownership rights, as soon as it possibly can. PPC's pleadings in this lawsuit demonstrate the likelihood of PPC's intent to illegitimately manufacture and sell Manley's and Sigma's products.

30. Manley and Sigma request that this Court grant a preliminary injunction after notice and hearing to prevent immediate, imminent harm and severe, irreparable injury to Manley and Sigma for which Manley and Sigma have no equitable remedy at law—PPC's pleadings implicitly admit PPC's aim of misappropriating Manley's and Sigma's intellectual property and reverse engineering, manufacturing, and selling the products derived therefrom.

31. Manley and Sigma are likely to succeed on their Declaratory Relief action and to be declared the exclusive and rightful owners of the intellectual property at issue. Manley and Sigma have demonstrated through substantial evidence that they are the rightful owners of the intellectual property that forms the basis of this lawsuit. PPC cannot provide any evidence that it is entitled to ownership of the products and intellectual property at issue, and therefore cannot defeat Manley's and Sigma's declaratory relief action.

32. Absent injunctive relief, there is a substantial threat that Manley and Sigma will suffer irreparable injury. Manley's and Sigma's rights to the intellectual property at issue will be rendered meaningless and their business will experience a severe diminution in value. PPC's own pleadings and document production in this dispute evince PPC's business practice of reverse engineering other companies' products. If PPC manages to achieve its goal in this case, Manley's and Sigma's business will be irreparably damaged, as Sigma is currently the only company in the market selling these innovative products.

33. The harm of rendering Manley's and Sigma's intellectual property rights meaningless and destroying their business outweighs any potential harm to PPC. The preliminary injunction sought by Defendants will in no way harm PPC, and will serve to protect the status quo–Manley and Sigma will maintain their exclusive ability to manufacture and sell their products, while PPC will simply be precluded from manufacturing and selling products it does not currently sell.

34. The public interest will be served by protecting and preserving Manley's and Sigma's intellectual property rights, as the requested preliminary injunction will preserve the status quo and further encourage the research and development of innovative products.

35. Manley and Sigma request that PPC be enjoined from manufacturing and selling the products identified as inventions of Justin Manley and products of Sigma in PPC's First Amended Petition.

36. Defendants further request that the Court set Manley's and Sigma's request for permanent injunction for trial on the merits, and after a finding is entered that Manley and Sigma are the exclusive and rightful owners of the products and intellectual property at issue, this Court issue a permanent injunction against PPC preventing PPC from manufacturing or selling Manley's and Sigma's products.

## VI.     JURY DEMAND

37.    Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Counter-claimants request a jury trial on all issues so triable.

## VII.     REQUEST FOR RELIEF

WHEREFORE, Counter-claimants Sigma Drilling Technologies, LLC and Justin Manley request a declaration stating that Sigma and Manley are the sole, rightful owners of the intellectual property at issue and preliminary and permanent injunctive relief enjoining PPC from manufacturing and selling Manley's and PPC's products, and such further relief, at law or in equity, which this Court may deem just and proper and to which Manley and Sigma may be entitled.

Respectfully submitted,

/s/   *Weston M. Davis*
**Gregory N. Ziegler**
Texas Bar No. 00791985
GZiegler@macdonalddevin.com
**William I. Gardner**
Texas Bar No. 24053219
BGardner@macdonalddevin.com
**Weston M. Davis**
Texas Bar No. 24065126
WDavis@macdonalddevin.com

**MACDONALD DEVIN, P.C.**
3800 Renaissance Tower
1201 Elm Street
Dallas, Texas 75270
214.744.3300 (Telephone)
214.747.0942 (Facsimile)

**ATTORNEYS FOR COUNTER-CLAIMANTS SIGMA DRILLING TECHNOLOGIES, LLC AND JUSTIN MANLEY**

## **CERTIFICATE OF SERVICE**

I hereby certify that on January 31, 2018, the foregoing pleading was filed with the clerk of the court for the U.S. District Court, Eastern District of Texas, using the electronic case filing system of the court. The electronic case filing system sent a "Notice of Electronic Filing" to all attorneys of record who have consented in writing to accept this Notice as service of documents by electronic means.

/s/     *Weston M. Davis*
**Weston M. Davis**