# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| PERFORMANCE PULSATION CONTROL, INC. | § § § § § § § § § § § § § | |
| | | Civil Action No. 4:17-CV-00450 |
| | | Judge Mazzant |
| v. | | |
| SIGMA DRILLING TECHNOLOGIES, LLC, INTREPID CONSULTING, LLC, JUSTIN MANLEY, ALLISON MANLEY, WILLIAM GARFIELD, and PAMELA GOEHRING–GARFIELD | | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Plaintiff Performance Pulsation Control, Inc.'s ("PPC") Motion to Compel (Dkt. #58). After reviewing the relevant pleadings and motion, the Court finds the motion should be granted in part.

## BACKGROUND

This case involves PPC's allegations that Justin Manley ("J. Manley"), a former employee, formed a competing company, Sigma Drilling Technologies, LLC ("Sigma"), to market and sell pulsation control products that he developed within the course of his employment with PPC. Specifically, PPC claims that J. Manley misappropriated PPC's trade secrets and confidential information while acting as the Director of Sales and Marketing for PPC. As a result, PPC filed suit seeking declaration that it is the owner of such intellectual property, as well as injunctive relief and monetary damages for breach of contract, breach of fiduciary duty, misappropriation, and unfair competition.

On August 28, 2017, the parties exchanged their Initial Rule 26 Disclosures. PPC contends that Sigma, Intrepid Consulting, LLC ("Intrepid"), J. Manley, Allison Manley ("A. Manley"),

William Garfield ("Garfield"), and Pamela Goehring-Garfield ("Goehring") (collectively "Defendants") failed to produce any of the materials they generally described in their disclosures or state when they intended to produce such materials. On September 14, 2017, PPC sent more than 850 Requests for Production to Defendants. *See* (Dkt. #58, Exhibits 1–6). On October 16, 2017, Defendants objected and responded to PPC's requests. *See* (Dkt. #58, Exhibits 7–12). Subsequently, on December 6, 2017, PPC sent a conference letter to Defendants detailing issues it believed existed as to Defendants' production and also narrowing their discovery requests (Dkt. #58, Exhibit 23). In response to the letter, on December 20, 2017, Defendants produced additional documents. Despite the supplemental production, on December 22, 2017, the Court held a telephonic conference to discuss the discovery dispute and recommended that the parties file briefing on the issue.

On December 28, 2017, PPC filed its Motion to Compel (Dkt. #58). On January 11, 2018, Defendants filed their response (Dkt. #63). On January 18, 2018, PPC filed its reply (Dkt. #70), and on January 25, 2018, Defendants filed their sur-reply (Dkt. #75).

**LEGAL STANDARD**

Under Federal Rule of Civil Procedure 26(b)(1), parties "may obtain discovery regarding any non[-]privileged matter that is relevant to any party's claim or defense . . . ." FED. R. CIV. P. 26(b)(1). Relevance, for the purposes of Rule 26(b)(1), is when the request is reasonably calculated to lead to the discovery of admissible evidence. FED. R. CIV. P. 26(b)(1); *Crosby v. La. Health & Indem. Co.*, 647 F.3d 258, 262 (5th Cir. 2011). The Court's scheduling order requires that the parties produce, as part of their initial disclosure, "documents containing, information 'relevant to the claim or defense of any party.'" (Dkt. #40 at pp. 3–4). Moreover, the Local Rules of the Eastern District of Texas provide further guidance suggesting that information is "relevant

2

to any party's claim or defense [if]: (1) it includes information that would support the disclosing parties' contentions; . . . (4) it is information that deserves to be considered in the preparation, evaluation or trial of a claim or defense. . . ." LOCAL RULE CV-26(d). It is well established that "control of discovery is committed to the sound discretion of the trial court." *Freeman v. United States*, 556 F.3d 326, 341 (5th Cir. 2009) (quoting *Williamson v. U.S. Dep't of Agric.*, 815 F.2d 368, 382 (5th Cir. 1987)).

Rule 37 of the Federal Rules of Civil Procedure allows a discovering party, on notice to other parties and all affected persons, to "move for an order compelling disclosure or discovery." FED. R. CIV. P. 37(a)(1). The moving party bears the burden of showing that the materials and information sought are relevant to the action or will lead to the discovery of admissible evidence. *Export Worldwide, Ltd. v. Knight*, 241 F.R.D. 259, 263 (W.D. Tex. 2006). Once the moving party establishes that the materials requested are within the scope of permissible discovery, the burden shifts to the party resisting discovery to show why the discovery is irrelevant, overly broad, unduly burdensome or oppressive, and thus should not be permitted. *Id.*

Federal Rule of Civil Procedure 34 governs requests for production of documents, electronically stored information, and tangible things. Rule 34 requires responses to "either state that inspection and related activities will be permitted as requested or state with specificity the grounds for objecting to the request, including the reasons." FED. R. CIV. P. 34(b)(2)(B). "An objection [to the entire request] must state whether any responsive materials are being withheld on the basis of that objection." FED. R. CIV. P. 34(b)(2)(C). On the other hand, "[a]n objection to part of a request must specify the part and permit inspection of the rest." FED. R. CIV. P. 34(b)(2)(C).

After responding to each request with specificity, the responding attorney must sign their request, response, or objection certifying that the response is complete and correct to the best of

3

the attorney's knowledge and that any objection is consistent with the rules and warranted by existing law or a non-frivolous argument for changing the law. FED. R. CIV. P. 26(g). This rule "simply requires that the attorney make a reasonable inquiry into the factual basis of his response, request, or objection." Fed. R. Civ. P. 26(g) advisory committee note (1983).

The federal rules follow a proportionality standard for discovery. FED. R. CIV. P. 26(b)(1). Under this requirement, the burden falls on both parties and the court to consider the proportionality of all discovery in resolving discovery disputes. FED. R. CIV. P. 26(b)(1), advisory committee note (2015). This rule relies on the fact that each party has a unique understanding of the proportionality to bear on the particular issue. *Id.* For example, a party requesting discovery may have little information about the burden or expense of responding. *Id.* "The party claiming undue burden or expense ordinarily has far better information—perhaps the only information—with respect to that part of the determination." *Id.*

### ANALYSIS

In its motion, PPC "seeks an order compelling Defendants to produce four (4) general categories of documents and tangible items from time periods before, during, and after J. Manley's employment." (Dkt. #58 at p. 2). Specifically, PPC seeks:

> (1) Emails and documents sent to or received from any "PPC Contact" and similar documents sent to or received from relevant third parties.
>
> (2) Emails and documents relating to PPC trade secrets, specific pulsation control products, and pulsation control generally.
>
> (3) Emails and documents relating to Defendants' scope of work with PPC, information owned by PPC, and emails to and from PPC.
>
> (4) Emails and documents relating to Defendants' competitive business.

(Dkt. #58 at pp. 10–13).

Defendants claim that, in response to Plaintiff's 850 separate requests for production, they "provided Plaintiff with written responses to the requests and objected where necessary to preserve

4

the protected status of their trade secrets." (Dkt. #63 at p. 3). As such, Defendants claim that the only documents they did not produce are: "(a) documents they do not possess; and (b) Defendants' proprietary and confidential trade secrets, the discovery of which is protected under substantive Texas law." (Dkt. #63 at p. 6).

**I. Emails and Documents Sent to or Received from Any "PPC Contact" and Similar Documents Sent to or Received from Relevant Third Parties**

PPC seeks documents sent to or received from any "PPC Contact" or relevant third party. PPC contends such information is relevant to PPC's trade secret misappropriation claims since J. Manley and A. Manley "were both privy to several lists of 'PPC contacts' during their employment and J. Manley sent those lists to his own personal email addresses during his employment." (Dkt. #58 at p. 10). Further, PPC claims that "any communications or documents sent or received from such third parties would show the extent to which Defendants have misappropriated PPC's confidential information." (Dkt. #58 at p. 10).

Originally, PPC defined "PPC Contact" as "any current or prospective PPC customer, vendor, supplier, distributor, reseller, contractor, manufacturer, and/or current and former PPC employee with whom You have any contact with or whose name became known to You during your employment with PPC." (Dkt. #58, Exhibit 1 at p. 5). Defendants objected classifying the definition as overly broad. On December 6, 2017, PPC sent Defendants a conference letter limiting its definition of "PPC Contact" to an exhibit listing specific PPC contacts, including clients, customers, and vendors (Dkt. #58, Exhibit 23). Further, the conference letter limited "relevant third parties" to "those third parties described or defined in Plaintiff's requests." (Dkt. #58, Exhibit 23 at p. 3). In response to the conference letter, on December 20, 2017, Defendants produced additional documents "and are conducting additional searches based on that information." (Dkt. #63 at p. 9).

5

The Court finds that to the extent Defendants have not already done so, they must produce documents sent to or received from any "PPC Contact" or "third party" as limited in the conference letter. However, the Court narrows such production to documents and communications dated during and after the time of Defendants' employment.

## II. Emails and Documents Relating to PPC Trade Secrets, Specific Pulsation Control Products, and Pulsation Control Generally

PPC seeks "all emails and documents relating to specific PPC trade secrets, including CFC Kits, the Acoustic Assassin, and/or the Automated Charging Kits." (Dkt. #58 at p. 11). PPC alleges that because such products belong to it production of said emails and documents are relevant to this lawsuit and "should be produced immediately." (Dkt. #58 at p. 11). Further, PPC contends that documents pertaining to "any product relating to pulsation control that was conceived and/or created during the time period in which Defendants were employed" are important, regardless if created before, during, or after Defendants' employment (Dkt. #58 at p. 11).

Defendants aver that "Plaintiff cannot seek information related to those alleged trade secrets because Plaintiff does not own those trade secrets." (Dkt. #63 at p. 10). Furthermore, Defendants claim that the use of a protective order (Dkt. #50) in this case is meaningless to preserve such trade secrets because "Plaintiff has one goal—to reverse engineer and begin to produce Defendants' products, regardless of ownership rights." (Dkt. #63 at p. 13).

In its conference letter, PPC limited its request for trade secrets to "emails/documents relating to the CFC Kits, the Acoustic Assassin, and/or the Automated Charging Kits which PPC contends are owned by PPC." (Dkt. #58, Exhibit 23 at p. 4). Further, PPC narrowed "pulsation control products" to products described and listed in Exhibits B and C to the conference letter (Dkt. #58, Exhibit 23 at p. 5).

6

The Court finds production of such information and documents is warranted as limited in PPC's conference letter, with the exception that such production is narrowed to documents and communications dated during or after Defendants' employment with PPC. Further, if Defendants are concerned about the preservation of such information, the Court reminds Defendants that it can produce information subject to the Court's protective order:

> 'ATTORNEY EYES ONLY' material may be disclosed only to the categories of persons and under the conditions described in this agreement. 'ATTORNEY EYES ONLY' material must be stored and maintained by a receiving Involved Person at a location and in a manner that ensures that access is limited to the persons authorized under this agreement.
>
> Confidential Treatment. Protected Documents and any information contained therein shall not be used or shown, disseminated, copied, or in any way communicated to anyone for any purpose whatsoever, except as provided in Paragraph (7)(b)–(c).

(Dkt. #50 at ¶¶ 7(a), 9). Additionally, Defendants maintain the option to redact documents in order to protect any alleged trade secrets or confidential information, subject to providing a privilege log.

### III. Emails and Documents Relating to Defendants' Scope of Work with PPC, Information Owned by PPC, and Emails to and from PPC.

PPC seeks any emails and documents relating to Defendants' scope of work with PPC, information owned by PPC, and emails to and from PPC. Because PPC alleges a "Work Made for Hire" claim, which involves a determination as to whether the works alleged to belong to PPC were within the scope of Defendants' employment, PPC contends such documents and communications are necessary. Regarding the latter requests, PPC clarifies in its conference letter that it "simply seeks information that, on its face, belongs and/or is owned by PPC, as well as emails to and from PPC." (Dkt. #58, Exhibit 23, at p. 7).

The Court finds that to the extent that Defendants have not produced such information, they must do so. However, any production is limited to information dated or obtained during and after Defendants' employment with PPC. Further, to the extent Defendants are concerned that any information is confidential or relates to any trade secrets, the Court reiterates Defendants' ability to produce any information pursuant to the Court's Protective Order and/or in a reasonably redacted format.

**IV.     Emails and Documents Relating to Defendants' Competitive Business.**

PPC alleges that during Defendants employment with PPC, Defendants formed Sigma, began to compete with PPC based on misappropriated confidential information, and used PPC's time and money to further their self-interests. As a result, PPC seeks documents relating to each of Defendants' competitive business activities claiming such information relates to its claims for trade secret misappropriation and breach of fiduciary duty. Further, if PPC is entitled to Defendants' profits, such information "is critical to understand how much Defendants have gained from their unlawful actions." (Dkt. #58 at p. 13). After Defendants objected to the request as overly broad, PPC, in its conference letter, described "competitive business activities" to include "formation documents, corporate governance documents, revenues and net profits earned, employees, agreements with third parties, contacts, types of work, etc." (Dkt. #58, Exhibit 23 at p. 7).

The Court finds to the extent Defendants have not already done so, they must produce all emails and documents related to Defendants' formation documents, corporate governance documents, revenues and net profits earned, employees, agreements with third parties, contacts, and types of work. However, such production is limited to during and after Defendants' employment with PPC.

## CONCLUSION

It is therefore **ORDERED** that Plaintiff's Motion to Compel (Dkt. #58) is hereby **GRANTED in part**. As such, Defendants shall produce all items as described herein within fourteen (14) days of the date of this Order.

**IT IS SO ORDERED.**
SIGNED this 13th day of February, 2018.

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE