IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| PERFORMANCE PULSATION CONTROL, INC. | § § | |
| *Plaintiff,* | § § | |
| **v.** | § § | |
| SIGMA DRILLING TECHNOLOGIES, LLC; INTREPID CONSULTING, LLC; JUSTIN MANLEY; ALLISON MANLEY; WILLIAM GARFIELD; PAMELA GOEHRING-GARFIELD; and ADVANCED RUPTURE DISK TECHNOLOGY, INC. | § § § § § § § § | **CASE NO. 4:17-cv-00450-ALM** |
| *Defendants*. | § | |

## MOTION FOR SUMMARY JUDGMENT OF PERIPHERAL DEFENDANTS ALISON MANLEY, WILLIAM GARFIELD, AND PAMELA GOEHRING-GARFIELD

Defendants Alison Manley, William Garfield and Pamela Goehring-Garfield (collectively, the "Peripheral Defendants") move for summary judgment as to all of Plaintiff's claims against them, because evidence exists, which demonstrates that there is no genuine issue of material fact as to Plaintiff's claims against the Peripheral Defendants. Further, Plaintiff has not produced credible evidence to support any of the causes of action asserted against the Peripheral Defendants. At no relevant time did any of the Peripheral Defendants perform acts or occupy positions that would give rise to the allegations asserted against them.

## I.     Statement of issues to be decided

1. Whether PPC's claims against Pamela Garfield should be dismissed with prejudice because no valid cause of action exists against her in this dispute and, alternatively, because any potential claim against her is contingent upon a finding against the community property of William Garfield.

2. Whether PPC's claims against Alison Manley for declaratory relief under 17 U.S.C. § 101, et seq. (Derivative Works and Works Made for

Hire), declaratory relief as to the ownership of trade secrets, misappropriation of trade secrets, and civil theft should be dismissed with prejudice because there is a lack of legally sufficient evidence to support such claims.

3.  Whether PPC's claims against William Garfield for declaratory relief under 17 U.S.C. § 101, et seq. (Derivative Works and Works Made for Hire), declaratory relief as to the ownership of trade secrets, misappropriation of trade secrets, civil theft, conversion, and unfair competition should be dismissed with prejudice because there is a lack of legally sufficient evidence to support such claims.

## II.   <u>Summary judgment evidence</u>

Attached as evidence in support of the Peripheral Defendants' motion for summary judgment are true and correct copies of the following documents:

| | |
|---|---|
| **Ex. A** | Declaration of William Garfield; |
| **Ex. B** | Declaration of Pamela Garfield; |
| **Ex. C** | Declaration of Alison Manley; |
| **Ex. D** | Deposition of William Garfield; |
| **Ex. E** | Deposition of Alison Manley; |
| **Ex. F** | Patent documents: U.S. Patent Application Publication No. US2017/0067456A1, published March 9, 2017; and U.S. Patent Application Publication No. US2017/0146176A1, published May 25, 2017; |
| **Ex. G** | *Performance Pulsation Control, Inc.'s Second Amended Objections and Responses to Sigma Drilling Technologies, LLC's First Interrogatories and Requests for Production (excerpt);* |
| **Ex. H** | Alison Manley's final pay stub dated October 8, 2014. (PPC 323110); |
| **Ex. I** | *Patent Assignment & Notice of Recordation of Assignment Document,* dated October 18, 2018; and |
| **Ex. J** | Deposition of Justin Manley. |

_____

**MOTION FOR SUMMARY JUDGMENT OF PERIPHERAL DEFENDANTS ALISON MANLEY, WILLIAM GARFIELD, AND PAMELA GOEHRING-GARFIELD**                                         **PAGE 2**
1570123.4   2530.1

III.    **Statement of undisputed facts**

A.    ***Undisputed facts regarding PPC's claims***

1.    This dispute arises out of the creation of certain oil and gas industry products by Justin Manley and Sigma Drilling Technologies, LLC.

2.    Justin Manley is the author of the patent applications for the products at issue, and was responsible for overseeing the design and creation of the overall group of works at issue. (Ex. D, 144:9-147:5; Dkt. #73, ¶¶ 13, 33, 38).

3.    Justin Manley formed Sigma Drilling Technologies, LLC in April of 2014.  (Dkt. #73, ¶ 33).

4.    On September 7, 2015 and November 25, 2015, Justin Manley filed patent applications related to the works at issue.  (Dkt. #73, ¶ 45).  These patent applications detailed specifications for a dampening apparatus and an automated nitrogen charging system respectively. *Id*.

5.    On June 27, 2017, PPC filed this lawsuit naming Justin Manley and Sigma as defendants, as well as William Garfield, Pamela Garfield, and Alison Manley.  (Dkt. #1).  PPC has since amended its original complaint twice.  (Dkt. #**; Dkt. #73).

6.    PPC's claims are primarily against Justin Manley and Sigma, whose names appear within PPC's causes of action a combined 60 times over 24 separate paragraphs.  (Dkt. #73, ¶¶ 53-108).

7.    By contrast, William Garfield, A Manley, and Pamela Garfield exist on the periphery of PPC's claims.  William Garfield's name appears 17 times within PPC's causes of action over 10 paragraphs, Alison Manley's name appears 9 times within PPC's causes of action

over 7 paragraphs, and Pamela Garfield is mentioned in a footnote to PPC's Second Amended Complaint.  (Dkt. #73, ¶¶ 53-108).

### B.    *Undisputed facts as to William Garfield*

8.    William Garfield is a professional engineer.  (Ex. A, ¶ 2).

9.    William Garfield was employed by PPC from February 13, 2013 through July 19, 2013.  (Ex. A, ¶ 2).  His title at PPC was Product Development Engineer.  (Ex. A, ¶ 2).

10.    When William Garfield's employment at PPC ended, he returned all PPC-related material in his possession to PPC.  (Ex. D, 143:22-25).

11.    William Garfield received no communication from Justin Manley or any Sigma representative regarding Sigma-related work until September 2013.  (Ex. D, 161:16-162:9).

12.    William Garfield neither possesses nor claims any ownership stake in Sigma or the works subject to this dispute.  (Ex. A at ¶ 7; Ex. J, 8:13-9:10; Ex. I).

### C.    *Undisputed facts as to Alison Manley*

13.    Alison Manley was a PPC contract labor employee from April of 2012 through October of 2014.  (Ex. G at 18; Ex. H; Ex. E, 14:13-15).

14.    While at PPC, Alison Manley performed clerical, office management, and basic marketing tasks such as maintaining the company website.  (Ex. E, 14:18-21).

15.    Alison Manley is not an engineer, possesses no technical expertise in the oil and gas industry, and did not perform any specialized or technical work during her tenure at PPC.  (Ex. C at ¶ 3).

16.    When Alison Manley's contracted work with PPC ended, she did not attempt to take any PPC-related materials with her.  (Ex. C at ¶ 5).

17.     Alison Manley performed no Sigma work and was not aware of Sigma's existence until after her employment at PPC ended. Ex. E, 108:11-14.

18.     Alison Manley does not own an individual ownership stake in Sigma or the works at issue in this lawsuit.  (Ex. C at ¶ 6).

### D.     *Undisputed facts as to Pamela Garfield*

19.     PPC has not pled any specific facts as to Pamela Garfield.  (Dkt. #73).

20.     Pamela Garfield was never a PPC employee, was never a Sigma employee, and is not an oil and gas industry professional.  (Ex. B at ¶ 3).

21.     PPC has stipulated that any recovery against Pamela Garfield is contingent upon a finding against William Garfield, as her involvement in this dispute exists "to the extent that she maintains ownership to community property which is the subject of this Action."  (Dkt. #73, p. 4, fn 2).

22.     Pamela Garfield has never owned, possessed, or controlled any interest in Sigma Drilling Technologies, LLC or the works at issue in this lawsuit.  (Ex. B at ¶ 4).

23.     Pamela Garfield does not own an interest in any of the patents, copyrights, or other trade secrets PPC claims are involved to this lawsuit.  (Ex. B at ¶ 4).

## IV.     Argument and authorities

### A.     *Summary judgment standards*

Summary judgment is proper in a case in which there is no genuine dispute of material fact.  FED. R. CIV. P. 56(a); *Scott v. Harris*, 550 U.S. 372, 380 (2007); *Celotex Corp. v. Catrett*, 47 U.S. 317, 322 (1986). A defendant who seeks summary judgment on a plaintiff's claims must demonstrate the absence of a genuine issue of material fact by either (1) submitting summary judgment evidence that negates the existence of a material element of the plaintiff's claim, or (2)

showing there is no evidence to support an essential element of the plaintiff's claim. *Celotex Corp.*, 477 U.S. at 322-23.

Under the federal summary judgment standard, if a court determines that a reasonable juror could not find in the plaintiff's favor on any one of the essential elements of a plaintiff's cause of action, summary judgment for the defendant is appropriate. *Funches v. Progressive Tractor & Implement Co., L.L.C.*, 905 F.3d 846, 851 (5th Cir. 2018), as revised (Oct. 8, 2018). Further, because the burden of proof at trial rests on PPC as the nonmovant, the Peripheral Defendants "must merely demonstrate the absence of evidentiary support in the record for the nonmovant's case." *Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 424 (5th Cir. 2000). Once the Peripheral Defendants do so, the burden shifts to PPC to produce evidence showing that there is a genuine issue of material fact for each challenged element. *Id.*

> **B.     Summary judgment is appropriate as to Pamela Garfield, because PPC's only pled claim against her is based on a speculative interest in her community property contingent on a judgment against her husband, an interest not recognized under Texas law, and the only is evidence is that she had no involvement with PPC's pled claims**

PPC has sued Pamela Garfield only "to the extent that she maintains ownership to community property" with William Garfield as William Garfield's spouse. (Dkt. #72, p. 4, fn. 2). Under the Texas Family Code, "a person is personally liable for the acts of the person's spouse only if: (1) the spouse acts as an agent for the person, or (2) the spouse incurs a debt for necessaries as provided by Subchapter F, Chapter 2" of the code. TEX. FAM. CODE § 3.201(a) (Vernon 1997). The statute further provides, "a spouse does not act as an agent for the other spouse solely because of the marriage relationship." TEX. FAM. CODE § 3.201(c) (Vernon 1997).

PPC's suit contains no specific pleadings of fact with regard to Pamela Garfield. (Dkt. #72). Further, no credible evidence demonstrates that Pamela Garfield acted as William

Garfield's "agent."   TEX. FAM. CODE §§ 3.201(a)(1), (c) (Vernon 1997).   Nor would any judgment against William Garfield be a "debt for necessaries" in connection with this suit.   TEX. FAM. CODE § 3.201(a)(2) (Vernon 1997).   PPC cannot assert that Ms. Garfield is liable simply based on her marriage to William Garfield.   Accordingly, Pamela Garfield cannot be held personally liable in this dispute, and the Court should grant summary judgment as to all of PPC's claims against her.

Texas law also does not require Pamela Garfield to be a party to any lawsuit against her husband, which appears to be the sole basis for PPC naming her as a Defendant.  (Dkt. #73, p. 4, fn. 2).  Texas law provides that "a spouse may sue and be sued without the joinder of the other spouse."   TEX. FAM. CODE § 1.105(a) (Vernon 1997).   Pamela Garfield's ownership of community property, which could be subject to a future tort judgment against William Garfield does not and should not serve as a basis for liability against Pamela Garfield.

Further, PPC has failed to identify a credible legal theory of liability against Pamela Garfield.   She has not been accused of an improper act, and appears to only remain in the case because she is William Garfield's spouse.   Pamela Garfield has no proper place in this dispute. Accordingly, even if PPC had pleaded a specific claim against Pamela Garfield, credible evidence demonstrates that she had no involvement with PPC, its claimed trade secrets or confidential information, or its claims in this lawsuit.   Pamela Garfield has testified she has no ownership interest "in any of the patents, copyrights, or other trade secrets PPC claims are involved to this lawsuit."  (Ex. B, ¶ 4).  And, she has never been employed by PPC or by Sigma, and has never possessed, used or disclosed any PPC trade secret or confidential information. (Ex. B, ¶ 3).  She has specifically stated she has "not performed work for any party associated with

this dispute, nor had any involvement in the works subject to this dispute." (Ex. B, ¶ 3). PPC has failed to produce any controverting evidence. *Byers*, 209 F.3d at 424.

Accordingly, even if PPC had pled any specific claim against Pamela Garfield, the only evidence is that she had no involvement with PPC, its claimed trade secrets or confidential information, or its claims in this lawsuit. For these additional reasons, this Court should grant summary judgment in favor of Pamela Garfield as to all of PPC's claims against her.

C. ***Summary judgment is appropriate as to PPC's trade secret misappropriation claim against William Garfield and Alison Manley, because there is no legally sufficient evidence of two essential elements of such claim***

PPC has pled a claim for trade secret misappropriation against Alison Manley and William Garfield under the Texas Uniform Trade Secrets Act. (Dkt. #73, pp. 21-22). To prevail on a cause of action for trade secret misappropriation against these parties, PPC must prove as to both individuals: (1) PPC owned a trade secret; (2) the individual Defendant misappropriated the trade secret; and (3) such misappropriation caused PPC injury. TEX. CIV. PRAC. & REM CODE §§ 134A.002(1), (3), (6); 134A.004(a) (Vernon 2013). In order to demonstrate that William Garfield or Alison Manley misappropriated a trade secret, PPC must prove that each Defendant either acquired a trade secret with knowledge of improper means, or that each Defendant used or disclosed a trade secret without PPC's consent. TEX. CIV. PRAC. & REM. CODE §134A.002(3). Summary judgment is appropriate for William Garfield and Alison Manley because PPC cannot raise a material fact dispute as to elements two or three of its TUTSA claim.[1]

William Garfield has testified that he did not acquire, use, or disclose any trade secret belonging to PPC. (Ex. A, ¶ 2). His employment with PPC concluded prior to his performance of any work for Sigma, and he did not take or use any intellectual property belonging to PPC

---

[1] By making this argument, Defendants are not conceding that PPC owned the alleged trade secret, but do not challenge that element of PPC's TUTSA claim in this motion.

after his employment there ended.  (Ex. A, ¶¶ 2-3).  William Garfield's work for Sigma did not involve a trade secret belonging to PPC or any other entity.  (Ex. A, ¶ 3).  Instead, the reference material for his design work included rudimentary sketches provided by Justin Manley and information publicly available on the internet. (Ex. D, 50:15-21).  At no time did William Garfield and Justin Manley discuss PPC proprietary information in connection with Sigma work.  (Ex. A, ¶ 3).  Further, William Garfield's work for Sigma was concentrated on industry-wide application.  (Ex. A, ¶ 3; Ex. D, 45:3-20, 68:15-69:6).  His work did not focus on, incorporate, or reference any particular proprietary information or trade secret.  (Ex. A, ¶ 3).  Accordingly, there is no genuine issue of material fact as to whether William Garfield misappropriated a specific PPC trade secret, and summary judgment is appropriate.

Similarly, PPC has no basis for a claim of trade secret misappropriation against Alison Manley. PPC hired Alison Manley as contract labor to perform office management for PPC and perform tasks that were clerical in nature.  (Ex. E, 14:15-21).  She does not have technical knowledge of PPC's products, or of the oil and gas industry generally.  (Ex. C, ¶¶ 2-3).  At the end of her contract work at PPC, Alison Manley did not take any tangible resources belonging to PPC, and ensured that she purged all PPC-related electronic information in her possession as part of a routine maintenance schedule well in advance of any controversy with PPC.  (Ex. C, ¶ 5; Ex. E, 131:17-133:9).  Alison Manley did not take, use, disclose, or misappropriate any trade secret belonging to PPC. (Ex. C, ¶¶ 4-5).  And, PPC has failed to produce any controverting evidence. *Byers*, 209 F.3d at 424.  Further, PPC's retained expert as to damages, Rebecca E. Szelc, did not identify any damages caused by Alison Manley.   Accordingly, there is no genuine issue of material fact with regard to whether Alison Manley misappropriated a PPC trade secret.

Further, PPC's retained expert as to damages has not identified any specific damages allegedly caused by William Garfield or by Alison Manley.[2]  Because PPC cannot raise a material fact dispute as to the essential elements of its TUTSA trade secret misappropriation claim, this Court should grant Alison Manley and William Garfield summary judgment as to such claim.

> **D.**   ***This Court should grant the Peripheral Defendants summary judgment as to PPC's preempted common law claims or, alternatively, grant summary judgment because there is no legally sufficient evidence of essential elements of such claims***

The Peripheral Defendants have separately moved for summary judgment as to PPC's common law claims for civil theft, conversion, and unfair competition, on the basis that such claims are preempted by TUTSA and, alternatively, by the Federal Copyright Act and the Federal Patent Act.  (Dkt. #224).  Should the Court grant such motion as to such claims, there is no need to rule on the summary judgment issues raised in this section as to each Peripheral Defendant.  Without waiving the relief sought in the separate preemption summary judgment motion, the Peripheral Defendants move in the alternative for summary judgment as to such claims, because there is no legally sufficient evidence of the essential elements of such claims.

> **1.**   **Summary judgment is appropriate as to PPC's civil theft claim against William Garfield and Alison Manley, because there is no legally sufficient evidence of their claim**

PPC has pleaded a claim alleging civil theft against Alison Manley and William Garfield. (Dkt. #73, pp. 24-25).  The essential elements such claim require PPC to prove: (1) PPC had a possessory right to property; (2) each Defendant unlawfully appropriated, secured, or stole PPC's property; (3) the Defendant's unlawful taking was made with the intent to deprive PPC of property; and (4) PPC sustained damages as a result of the alleged theft. TEX. CIV. PRAC. & REM.

---

[2]       PPC's expert report was designated "Attorney's Eyes Only," so is not filed with this motion.

CODE §§ 134.002(2), 134.003, 134.005 (Vernon 1989); TEX. PEN. CODE §§ 31.03(a), (b)(1), 31.04(a) (Vernon 2011).  PPC's claim for civil theft against William Garfield and Alison Manley fails because PPC cannot raise an issue of material fact as to elements two, three, or four of its claim with regard to the these defendants.

William Garfield testified that he did not have any conversations with Justin Manley related to product development for Sigma until months after his employment at PPC ended.  (Ex. D, 161:19-163:3).  Therefore, and in light of the fact that William Garfield returned intellectual property belonging to PPC when his employment there concluded, William Garfield could not have deprived PPC of any property in his work for Sigma or otherwise.  (Ex. D, 90:11-21). William Garfield's work for Sigma was to provide engineering and design services based upon Justin Manley's unique set of ideas for new oil and gas products.  (Ex. A, ¶¶ 3-4).  At no time did William Garfield perform these services with the intent to deprive any entity of property, including PPC.  (Ex. A, ¶ 4).  Additionally, William Garfield testified he "did not take PPC's time, funds, car allowance, credit cards, computers, or expense report process."  (Ex. A, ¶ 2). And, PPC has failed to produce any evidence that any alleged theft by William Garfield caused PPC injury.  *Byers*, 209 F.3d at 424.  For these reasons, this Court should grant summary judgment as to PPC's civil theft allegation as to William Garfield.

Further, Alison Manley testified she did not perform work for Sigma while employed at PPC as a contract worker.  (Ex. C, ¶ 6).  She did not appropriate PPC materials for Sigma-related or any other allegedly inappropriate purposes thereafter.  (Ex. E, 114:20-25; Ex. C, ¶ 5). Additionally, Alison Manley testified she "did not take PPC's time, funds, car allowance, credit cards, computers, or expense report process."  (Ex. C, ¶ 4).  And, PPC has failed to produce any evidence that any alleged theft by Alison Manley caused PPC injury.  *Byers*, 209 F.3d at 424.

Further, PPC's retained expert as to damages has not identified any specific damages allegedly caused by Alison Manley.   There is not credible evidence that Alison Manley was an "employee," unlawfully appropriated PPC property, that she had the intent to do so, or that PPC was damaged by any alleged theft on her part. For these reasons, the Court should grant summary judgment as to PPC's civil theft allegation as to Alison Manley.

> **2.    Summary judgment is appropriate as to PPC's conversion claim against William Garfield, because there is no legally sufficient evidence of three essential elements of such claim**

PPC has pleaded a claim for conversion against William Garfield. (Dkt. #73, pp. 25-26). The essential elements of this claim require PPC to prove: (1) PPC owned, possessed, or had the right to immediate possession of personal property; (2) William Garfield unlawfully and without authorization assumed and exercised control over the property to the exclusion of, or inconsistent with, PPC's right as an owner; (3) PPC demanded return of the property; and (4) William Garfield refused to return the property.  *Lawyers Title Co. v. J.G. Cooper Dev., Inc.*, 424 S.W.3d 713, 718 (Tex. App—Dallas 2014, pet. denied).  PPC's claim for conversion fails because there is no genuine issue of material fact as to elements three and four of this cause of action.

As noted above, William Garfield did not have any discussions with Justin Manley related to product development until months after William Garfield's employment at PPC ended. (Ex. D, 161:19-163:3).  William Garfield did not exercise any sort of dominion or control over PPC property outside of the course, scope and duration of his employment at PPC.  (Ex. A, ¶ 4). PPC claims William Garfield merged "PPC's intangible rights in the Confidential Information with unique paper documents, including but not limited to, among other things, the federal patent application filed by Manley/and or Garfield."  (Dkt. #73, ¶ 94).  But, PPC cannot produce legally sufficient evidence that William Garfield was involved in this undefined "merger" of any such

information into the referenced documents. Nor has PPC identified in discovery any "other things" it claims William Garfield converted.  And, despite an adequate time for discovery, PPC has failed to produce any evidence that a conversion by William Garfield caused PPC injury. *Byers*, 209 F.3d at 424.  For these reasons, the Court should grant William Garfield summary judgment as to PPC's conversion claim.

> **3.     Summary judgment is appropriate as to PPC's unfair competition claim against William Garfield, because there is no such independent cause of action in Texas, and no evidence of unfair competition**

PPC has pleaded a claim for unfair competition against William Garfield. (Dkt. #73, p. 26).  PPC cannot maintain a cause of action against William Garfield for "unfair competition" because it is not a cause of action recognized by Texas courts, but rather an "umbrella for all statutory and non-statutory causes of action arising out of business conduct which is contrary to honest practices in industrial or commercial matters." *U.S. Sporting Prods., Inc. v. Johnny Stewart Game Calls, Inc.*, 865 S.W.2d 214, 217 (Tex. App.—Waco 1993, writ denied) (quoting *Am. Heritage Life Ins. Co. v. Heritage Life Ins. Co.*, 494 F.2d 3, 14 (5th Cir. 1974)).  The concept of unfair competition includes several causes of action including passing off/palming off and trade secret misappropriation, to name only a few.  *Id.*  Regardless, William Garfield was not employed by PPC during the time PPC alleges unfair competition, and there is no evidence of any post-employment contractual obligation not to compete with PPC.  For these reasons, this Court should grant William Garfield summary judgment as to PPC's unfair competition claim.

> **E.     *The Court should grant the Peripheral Defendants summary judgment as to PPC's claim for declaratory relief as to ownership of trade secrets, because the Peripheral Defendants have no ownership claim to PPC's alleged trade secrets***

Within its claim for declaratory relief as to ownership of trade secrets, PPC states that "there is an actual controversy...in that both (PPC) and Defendants claim ownership of the trade

secrets relating to the (patent) applications, CFC Kits, Acoustic Assassin and Automated Nitrogen Charging and Adjustment System for Gas-charged Pulsation Equipment."  (Dkt. #73, ¶ 73).  Further, to the extent there is such an "actual controversy," this alleged controversy does not apply to the Peripheral Defendants.

All trade secrets subject to this dispute are claimed exclusively by Justin Manley and Sigma.  (Ex. J, 8:13-9:10; Ex. I).  PPC seems to acknowledge this, as PPC alleges that "in a prior lawsuit and original petition, Justin Manley and Sigma allege that the CFC Kits and the Acoustic Assassin were trade secrets belonging to them."  (Dkt. #73, ¶ 72).  No Peripheral Defendant has any ownership stake whatsoever in Sigma or the trade secrets subject to this dispute and there is no evidence to the contrary.  (Ex. D, 15:9-10; Ex. C, ¶ 6; Ex. B, ¶ 3; Ex. A, ¶ 7).   Accordingly, PPC's claim seeking a declaration of the ownership rights related to the trade secrets subject to this dispute does not apply to the Peripheral Defendants.   For these reasons, this Court should grant the Peripheral Defendants summary judgment as to PPC's declaratory claim for ownership of trade secrets.

> **F.**     *The Court should grant the Peripheral Defendants summary judgment as to PPC's Copyright Act declaratory relief claims, because such theories do not apply to the Peripheral Defendants*

PPC has pleaded claims for declaratory relief under the Copyright Act, alleging PPC is the owner of certain copyrights under "derivative works" and "works made for hire" theories. (Dkt. #73, pp. 16-20).  PPC has failed to provide the Court with clear guidance as to which parties against whom it seeks declaratory relief.  Instead, PPC has muddled its own claims by inconsistently referring to different groups of defendants within the same causes of action that seek declaratory relief.  (Dkt. #73, ¶¶ 54-57, 72-73).  Nevertheless, because PPC's claims are not

viable with respect to the Peripheral Defendants, this Court should grant summary judgment as to those claims.

### 1.      Standards for Copyright Act claims

Copyright is a form of protection provided by the laws of the United States to the authors of "original works of authorship" that are fixed in a tangible form of expression. 17 U.S.C. § 101.  While undefined within the Copyright Act, "original works of authorship", the Fifth Circuit has stated that "factual compilations must be made such that the independent creation of the compilation involves 'at least some minimal degree of creativity.'"  *Emanation, Inc. v. Zomba Recording Inc*., 72 F. App'x 187, 190 (5th Cir. 2003).  The Copyright Act provides that the copyright in a work initially belongs to the author who created the work.  *Cmty. for Creative Non-Violence v. Reid*, 490 U.S. 730, 737 (1989); 17 U.S.C. § 201(a).  As a general rule, the author is the party who actually creates the work or, put another way, the person who translates the work into a fixed, tangible expression entitled to copyright protection.  *Id.*

"Works made for hire" are an exception to the general rule for claiming copyright. *Reid*, 490 U.S. at 737. Section 101 of the Copyright Act defines a "work made for hire" to include works by an employee that are within the course and scope of his or her employment, or a work specially ordered or commissioned...if the parties expressly agree in a written instrument signed by them that the work shall be considered a work made for hire. 17 U.S.C.§ 101. When a work is made for hire, the author is not the individual who actually created the work. *Reid,* 490 U.S. 730. Instead, the party that hired the individual is considered the author and the copyright owner of the work unless there is a written agreement to the contrary.  *Id.*

A "derivative work" is a work based on or derived from one or more already existing works. 17 U.S.C. § 101. According to the Copyright Office's circular 14-1013, to be

copyrightable, a derivative work must incorporate some or all of the preexisting "work" and add new original copyrightable authorship to that work.

> **2.    Summary judgment is appropriate as to PPC's claim for declaratory relief under a "works made for hire" theory, because such theory does not apply to the Peripheral Defendants**

Under section 101 of the Copyright Act, works made for hire are (1) those that occur within the course and scope of employment, or (2) those specially ordered or commissioned...if the parties expressly agree in a written instrument signed by them that the work shall be considered a work made for hire.  17 U.S.C. § 101.  PPC contends Alison Manley and William Garfield were "at all times properly classified as employees under applicable state and federal laws" and that these defendants "developed" the works made subject to this dispute "while they were employees within the scope of their employment with PPC."  (Dkt. #73, ¶¶ 61-64).  The only legally sufficient evidence is to the contrary.

Alison Manley learned of Sigma's existence only after her employment at PPC had concluded. (Ex. E, 108:11-14).  Additionally, PPC has not alleged any specific participation by Alison Manley in the development of the works subject to this dispute.  Alison Manley was not an employee, did not perform any such work, nor did she perform any work for Sigma whatsoever until after her employment at PPC concluded.  (Ex. C, Ex. E, 108:11-14).  Further, design work cannot be rightly claimed to fall within the course and scope of her employment at PPC.  (Ex. C, ¶¶ 2-3).  Thus, no work Alison Manley performed for Sigma could have occurred within "the course and scope" of her employment with PPC and PPC cannot claim any of her efforts for Sigma as a "work made for hire."   PPC has failed to produce any controverting evidence. *Byers*, 209 F.3d at 424.

Similarly, William Garfield's work for Sigma cannot be classified as a work made for hire because none of it occurred during the "course and scope" of his employment with PPC. According to PPC's own pleadings, Sigma formed in April of 2014, while William Garfield's last day of employment with PPC was in July of 2013. (Dkt. #73, ¶¶ 34, 41).  Further, William Garfield and Justin Manley did not discuss the possibility of design work for the entity that would become Sigma until September of 2013, several months after William Garfield ended his employment at PPC.  (Ex. D, 161:19-163:3).  No work William Garfield performed for Sigma occurred within the "course and scope" of his employment at PPC and as such none of it is properly classified as a "work made for hire" with regard to PPC.  PPC has failed to produce any controverting evidence.  *Byers*, 209 F.3d at 424.

For these reasons, PPC has failed to meet its burden supporting any basis for declaratory relief against the Peripheral Defendants under a "works made for hire" copyright theory. Accordingly, the Court should grant Peripheral Defendants summary judgment as to such claim.

### 3.     Summary judgment is appropriate as to PPC's claim for declaratory relief under a "derivative works" theory, because there is legally insufficient evidence that PPC created any original work

It is undisputed that Justin Manley is the person who translated the Sigma works at issue into a "fixed, tangible expression."  (Ex. D, 144:9-147:5; Dkt. #73, ¶¶ 13, 33, 38).  As PPC has pleaded, Justin Manley is the author of the applicable patent applications and oversaw the design of the items contained therein.  (Dkt. #73, ¶¶ 33, 38).  Further, PPC has pleaded Justin Manley is the author of the invention disclosure documents related to these patents.  (Dkt. #73, ¶ 62). Under the precedent enumerated by the Supreme Court in Reid and the plain language of 17 U.S.C. 201(a), PPC cannot rightfully claim that the works subject to this dispute are PPC's

"original works of authorship."  Here, credible evidence establishes PPC is not the holder of the patents at issue.  (Ex. F).

Additionally, PPC has provided no basis under which it may claim the works subject to this dispute are "derivatives of PPC's pre-existing protected materials."  (Dkt. #73, ¶ 55). Specifically, PPC has failed to specify from where the works that are subject to this dispute are derived. Instead, PPC only refers generally to "intellectual property embodying the substance of (Sigma's patent) Applications" and "materials that were shared with Defendant J. Manley, Defendant A. Manley, and/or Defendant Garfield" to support its claim that Sigma's intellectual property is derived from PPC's pre-existing protected materials.  (Dkt. #73, ¶ 55).  The language of 17 U.S.C. § 101 requires that, for a derivative work to exist, a pre-existing work upon which the derivative work is based must also exist.  PPC has identified no previous or specific "work" in this regard. Because PPC has failed to identify a preexisting work upon which the claimed work is based on or derived from, it cannot seek declaratory relief under a derivative works theory. For these reasons, this Court should grant the Peripheral Defendants summary judgment as to such claim.

## VII.   Conclusion

**WHEREFORE, PREMISES CONSIDERED,** in accordance with Fed. R. Civ. P. 56 and Local Rule CV-56, Defendants Alison Manley, William Garfield, and Pamela Garfield pray that the Court grant their Motion for Summary Judgment, enter an Order dismissing with prejudice all of Plaintiff's claims against them, and for such other and further relief, both at law and in equity, to which they may show themselves justly entitled.

Respectfully submitted,


/s/   *Gregory N. Ziegler*
**Gregory N. Ziegler**                          **Clyde M. Siebman**
Texas Bar No. 00791985                          Texas Bar No. 18341600
GZiegler@macdonalddevin.com                     clydesiebman@siebman.com
**William I. Gardner**                          **Elizabeth S. Forrest**
Texas Bar No. 24053219                          Texas Bar No. 24086207
BGardner@macdonalddevin.com                     elizabethforrest@siebman.com
**J. Robert Skeels**                            SIEBMAN, FORREST, BURG & SMITH, LLP
Texas Bar No. 24048802                          Federal Courthouse Square
RSkeels@macdonalddevin.com                      300 N. Travis Street
MACDONALD DEVIN, P.C.                            Sherman, Texas 75090
3800 Renaissance Tower                          (903) 870-0070 (Telephone)
1201 Elm Street                                 (903) 870-0066 (Telecopy)
Dallas, Texas 75270
214.744.3300 (Telephone)                        **Attorneys for Defendants**
214.747.0942 (Facsimile)


## CERTIFICATE OF SERVICE

I hereby certify that on November 8, 2018 the foregoing pleading was filed with the clerk of the court for the U.S. District Court, Eastern District of Texas, using the electronic case filing system of the court. The electronic case filing system sent a "Notice of Electronic Filing" to all attorneys of record who have consented in writing to accept this Notice as service of documents by electronic means.


/s/   *Gregory N. Ziegler*
**Gregory N. Ziegler**