IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| PERFORMANCE PULSATION | § | |
| CONTROL, INC. | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | |
| | § | |
| SIGMA DRILLING TECHNOLOGIES, | § | Civil Action No. 4:17-cv-00450-ALM |
| LLC; INTREPID CONSULTING, LLC; | § | |
| JUSTIN MANLEY; ALISON MANLEY; | § | JURY |
| WILLIAM GARFIELD; | § | |
| PAMELA GOEHRING-GARFIELD; and | § | |
| ADVANCED RUPTURE DISK | § | |
| TECHNOLOGY, INC. | § | |
| *Defendants*. | § | |

DEFENDANT ADVANCED RUPTURE DISK TECHNOLOGY, INC.'S
MOTION FOR SUMMARY JUDGMENT

Defendant Advanced Rupture Disk Technology, Inc. (ARDT) moves for summary judgment seeking dismissal with prejudice of Plaintiff Performance Pulsation Control, Inc.'s (PPC) sole cause of action against ARDT for breach of contract and, in accordance with Fed. R. Civ. P. 56 and Local Rule CV-56, shows:

I.    **Statement of issues to be decided**

1.    Whether PPC's breach of contract claim against ARDT should be dismissed with prejudice due to lack of contract formation, where it is undisputed PPC failed to execute and deliver the formal written contract.

2.    Whether PPC's breach of contract claim against ARDT should be dismissed with prejudice due to lack of contract formation, as the parties failed to agree to the essential terms of the agreement, because it is undisputed the parties never entered into a separate written agreement defining the essential terms of the contract.

3.    Whether PPC's breach of contract claim against ARDT should be dismissed with prejudice due to lack of contract formation, because the contract upon which PPC sues lacks consideration.

4.   Alternatively, whether the contract on which Plaintiff sues must be cancelled or rescinded for failure of consideration as a matter of law.

5.   Alternatively, whether PPC's breach of contract claim against ARDT should be dismissed with prejudice because PPC has failed to produce legally sufficient evidence PPC performed under the contract on which it sues.

## II.   <u>Introduction</u>

PPC's sole pleaded claim against ARDT is breach of contract.  (Dkt. #73, pp. 15, 27). For over twenty years, ARDT has been a distributor and seller of equipment and services for pressure relief and protection applications, and has partnered with multiple manufacturing and engineering companies.  However, at no time has ARDT been a distributor or seller of equipment for PPC, nor has ARDT contracted to perform work for PPC.  Specifically, ARDT did not contract with PPC to be "its sales representative in the pulsation control industry."

PPC joined ARDT as a Defendant in its Second Amended Complaint.  In its Complaint, PPC states that "[a]s early as July 2013, PPC (through J. Manley) *had engaged* ARDT to be its sales representative in the pulsation control industry."  (Dkt. #73, ¶ 48) (emphasis added).  As its only cause of action against ARDT, PPC asserts that ARDT breached its contract with PPC by "using and disclosing PPC's confidential and proprietary information and assisting J. Manley and Sigma to manufacture and distribute pulsation control products in competition with PPC."[1]  The purported contract is a "Non-Competition, Confidentiality and Invention Agreement" (hereinafter the "NDA").

PPC drafted, but did not sign the NDA.  Pursuant to the unambiguous terms of the NDA, PPC was required to contemporaneously contract with ARDT to be its manufacturer sales representative and provide confidential information to ARDT to perform such work.  This did

---

[1]   ARDT denies the allegations set forth in PPC's Second Amended Complaint and specifically denies that it used or disclosed purported confidential and proprietary information of PPC and denies that it is liable for breach of contract.  Further, PPC can provide no evidence to support such contention.

not occur.  No contractual or business relationship between ARDT and PPC was formed.  In addition, the NDA was not supported by consideration or, alternatively, is unenforceable because of a failure of consideration.  In the further alternative, summary judgment is proper because there is no legally sufficient evidence that PPC performed under the contract on which it sues and there is no evidence to support PPC's contention that ARDT received, used or disclosed any confidential information.  Based on the undisputed facts and legal authorities set forth below, PPC's sole cause of action against ARDT for breach of contract fails as a matter of law.

**III.**    **Summary judgment evidence**

Attached as evidence in support of this motion for summary judgment are true and correct copies of the following documents:

> **Ex. A**       Affidavit of Dave Denning with Exhibits 1 – 16.
>
> **Ex. B**       Affidavit of Justin Manley with Exhibits 1 – 3.
>
> **Ex. C**       Deposition of John T. Rogers, Corp. Rep. of PPC.
>
> **Ex. D**       PPC's 4th Am. Resp to J Manley's First Set of Discovery.
>
> **Ex. E**       Deposition Transcript, Dave Denning, Corp. Rep. – ARDT.
>
> **Ex. F**       Excerpts, John Miller, *The Reciprocating Pump*, 2nd Ed. 1997 (1st Ed. 1991).

**IV.**    **Statement of undisputed facts**

1.      On May 13, 2013, Justin Manley ("Manley"), while employed with PPC as its Sales and Marketing Director, sent an email to Michael Kelly ("Kelly") with ARDT and asked if they "could start a dialog" about a "few initiatives that we [PPC] are in the midst of undertaking."

2.      Manley contacted ARDT to discuss a potential agreement wherein ARDT would work as the manufacturer sales representative of PPC.

3.      Over the next few months, PPC and ARDT discussed a potential sales representative relationship.  These communications occurred primarily through Manley on behalf of PPC and Dave Denning ("Denning"), President of ARDT.

4.      On July 9, 2013, Denning and Shannon Birchum ('Birchum'), ARDT's Vice-President, had dinner with Manley and discussed a possible sales relationship between ARDT and PPC.

5.      On July 10, 2013, Manley sent Denning and Kelly a proposed NDA, which was drafted by PPC.

6.      In relevant part, the NDA states that "[i]n consideration for the Company's [PPC's] contracting with the Contractor [ARDT] to perform the Work (defined below) for the Company and agreeing to provide the Contractor with Confidential Information (defined below) to the extent necessary to perform the Work, Contractor agrees as follows . . . ."

7.      "Work" is defined by the NDA as "the products and/or services that Contractor [ARDT] has agreed to provide to the Company [PPC] pursuant to an agreement entered into between the Company and Contractor contemporaneously with this Agreement ('Underlying Agreement')."

8.      "Confidential Information" is defined by the NDA as "all tangible embodiments of technical information relating to the Company [PPC], its business, products, customers, consultants, suppliers or contractors: (a) which Contractor [ARDT] knows or reasonably should know are considered by the Company to be confidential and/or which are marked with words 'Confidential,' 'Proprietary' or any other designation of confidentiality; and (b) which are not in the public domain."

9.      At the request of Manley, Denning signed the proposed NDA and returned it to Manley on July 22, 2013.  Denning also advised PPC that they needed "to complete a sequence of events or checkpoints that ARDT needs to get done before we proceed much further." Denning further advised PPC:

> The key is updating our strategic business plan to incorporate PPC into our future planning.  Then it's notifying our existing suppliers that we'll be devoting a significant amount of resources to PPC during initial sales development.  They'll want to see my updated plan & discuss the impact on their own businesses.  I want to ensure that none of them throw a hissy fit that slows our (ARDT & PPC) progress unexpectedly.  So, 2 main hoops to jump through that I believe we can complete this week.  On your end, how are things progressing."

10.      PPC did not sign or deliver the proposed NDA to ARDT.

11.      By email dated July 23, 2013, Manley advised Denning that he was working to create new sales material for PPC and, therefore, was sending "some of the old materials" to ARDT.  This material was sent to ARDT to begin to familiarize it with terminology and PPC products.  The majority of this old sales material was dated 2001 – 2006, and had been provided to PPC's customers and potential customers in the past.  This sales material – or information in the sales material – was available in the public domain, including PPC's website, and known in the industry.   The old sales materials were not marked "Confidential," "Proprietary," or designated in any other way as confidential or proprietary.  In addition, Manley's July 23, 2013 email did not state that these documents were confidential or proprietary.

12.      On July 31, 2013, Denning and Birchum met Manley for lunch and continued discussions regarding a possible sales agreement between ARDT and PPC.

13.      On August 5, 2013, Denning sent PPC a proposed "Manufacturer's Sales Representation Agreement" ("MSRA").  The MSRA was the "Underlying Agreement" referenced in the proposed NDA.

14.     On August 5, 2013, Manley sent an email to Denning advising that PPC "will not be able to enter into this agreement as it stands," and set forth on approximately 3 pages the multiple reasons why PPC would not enter into the MSRA or "Underlying Agreement."

15.     Manley and Denning discussed Manley's comments regarding the proposed MSRA between PPC and ARDT, and Denning sent Manley a revised draft of the proposed MSRA on August 16, 2013.

16.     ARDT did not receive additional communications from PPC until almost one month later.  On September 12, 2013, Manley advised Denning by email that "[b]y the middle to the last part of next week, we [PPC] will have an agreement that I want to go over with you. Now that everybody understands the nature of our potential relationship, people are wanting to get serious with the frame work of the agreement to ensure that the relationship is long lasting." However, no sales representative agreement was sent by PPC to ARDT the next week.

17.     On September 12, 2013, Manley also sent Denning draft training material, asking for ARDT's feedback.  The information contained in this draft material was from information publicly available on PPC's website or from other publicly available material and sources common in the industry.  The proposed training materials were not marked "Confidential," "Proprietary," or designated in any other way as confidential or proprietary.  In addition, Manley's September 12, 2013 email did not state that these documents were confidential or proprietary."

18.     By email dated October 17, 2013, Denning wrote to Manley and stated that the "[l]ast I heard from you it sounded like John [Rogers] [President of PPC] had come around to the idea of working with ARDT, but we've lost momentum since that conversation.  I'd like to get back together with you to discuss where we actually are in the process of putting together a sales

rep arrangement, and where we go from here.  What dates do you have available over the next few weeks?"

19.     On October 21, 2013, Manley sent an email with one page of a catalog of Accumulators, Inc. This catalog page was in the public domain and available to the public online at https://www.accumulators.com.  The catalogue page is not a PPC document.  This document was not marked 'Confidential,' 'Proprietary,' or designated in any other way as confidential or proprietary.  In addition, Manley's October 21, 2013 email did not include any information about the catalog page and did not state that the document was confidential or proprietary.

20.     On October 31, 2013, Manley and Denning held a conference call to discuss the potential sales representative agreement.  Following that call, Denning sent an email to Manley identifying terms and conditions to be included in the proposed MRSA or Underlying Agreement.  Denning also requested a meeting with John Rogers, President of PPC, and stated "I think we need to sit down with John and discuss whether our end goals are aligned before we sign on.  If all we're going to do is build these accounts for PPC only to have PPC intentionally let our contract expire in a year, then our business goals aren't well aligned."

21.     No further communications occurred between PPC and ARDT regarding a potential sales representative agreement, the "Underlying Agreement" to the proposed NDA.

22.     The proposed MSRA was not signed by either party and no contractual agreement was reached between ARDT and PPC for ARDT to work as PPC's manufacturer sales representative.

23.     Likewise, the proposed NDA was not signed by PPC or finalized.

24.     PPC did not contract with ARDT to perform Work as defined by the proposed NDA or "pursuant to an agreement entered into between PPC and ARDT contemporaneously with" the proposed NDA.

25.     PPC admits that it did not "engage" ARDT to be its sales representative and that ARDT has never been PPC's sales representative.

26.     ARDT did not perform work for PPC, and neither company exchanged money or services.

27.     Additionally, PPC did not provide to ARDT "tangible embodiments of technical information" related to PPC marked as "Confidential," "Proprietary," or with any other designation as confidential. [2]

## V.     Arguments and authorities

### A.     *Legal standards*

#### 1.     Summary judgment standards

Summary judgment is proper in a case in which there is no genuine dispute of material fact.  FED. R. CIV. P. 56(a); *Scott v. Harris*, 550 U.S. 372, 380 (2007); *Celotex Corp. v. Catrett*, 47 U.S. 317, 322 (1986).  A defendant who seeks summary judgment on a plaintiff's claims must demonstrate the absence of a genuine issue of material fact by either (1) submitting summary judgment evidence that negates the existence of a material element of the plaintiff's claim, or (2) showing there is no evidence to support an essential element of the plaintiff's claim.  *Celotex Corp.*, 477 U.S. at 322-23.

---

[2] *See* Ex. A & Exs. 1-16.  All tangible embodiments of information have been produced in this lawsuit by ARDT. Out of the hundreds of thousands of documents in this case, these are some of the few that have not been marked with any designation of confidentiality pursuant to Dkt. # 50.  Plaintiff has made no effort to designate these documents as "confidential" or "attorneys eyes only."

Under the federal summary judgment standard, if a court determines that a reasonable juror could not find in the plaintiff's favor on any one of the essential elements of a plaintiff's cause of action, summary judgment for the defendant is appropriate. *Funches v. Progressive Tractor & Implement Co., L.L.C.*, 905 F.3d 846, 851 (5th Cir. 2018), as revised (Oct. 8, 2018). Further, because the burden of proof at trial rests on PPC as the nonmovant, ARDT "must merely demonstrate the absence of evidentiary support in the record for the nonmovant's case." *Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 424 (5th Cir. 2000). Once ARDT does so, the burden shifts to PPC to produce evidence showing that there is a genuine issue of material fact for each challenged element. *Id.*

### 2.    Texas contract standards

Under Texas law, "[t]he essential elements of a breach of contract action are: (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach." *Smith Int'l., Inc. v. Egle Group, LLC*, 490 F.3d 380, 387 (5th Cir. 2007) (citing *Valero Mktg. & Supply Co. v. Kalama Int'l, L.L.C.*, *Valero Mktg. & Supply Co. v. Kalama Intern.*, 51 S.W.3d 345, 351 (Tex. App.—Houston [1st Dist.] 2001, no pet.)).

The threshold element, the existence of a valid contract, requires evidence of an offer, an acceptance, and valid consideration. *See Emerald City Mgmt., LLC v. Kahn*, 4:14-CV-358, 2016 WL 98751, at *26 (E.D. Tex. Jan. 8, 2016) (Mazzant, J.); *Harco Energy, Inc. v. Re-Entry People, Inc.*, 23 S.W.3d 389, 392 (Tex. App.—Amarillo 2000, no pet.). When determining whether there was an offer and acceptance giving rise to a valid contract, courts consider whether there was a "meeting of the minds," defined as "a mutual understanding and assent to the expression of the parties' agreement," an objective standard. *Dickey's Barbecue Pit, Inc. v. Neighbors*, 4:14-CV-

484, 2015 WL 11199080, at *3 (E.D. Tex. Sept. 18, 2015) (citing *Domingo v. Mitchell*, 257 S.W.3d 34, 39 (Tex. App.—Amarillo 2008, pet. denied)).  Consideration for a contract is a bargained-for exchange of promises, consisting of both benefits and detriments to each of the contracting parties. *Ulico Cas. Co. v. Allied Pilots Ass'n*, 262 S.W.3d 773, 790 (Tex. 2008).

### B. *Summary judgment is appropriate because a contract was not formed between ARDT and PPC, as PPC never executed or delivered the NDA to ARDT*

Under Texas law, "the question of whether an offer was accepted and a contract was formed is primarily a question of law for the court to decide." *Scaife v. Associated Air Ctr. Inc.*, 100 F.3d 406, 410 (5th Cir. 1996) (citing *S & A Marinas, Inc. v. Leonard Marine Corp.*, 875 S.W.2d 766, 769 (Tex. App.—Austin 1994, writ denied)).  Further, if an agreement is reduced to writing, the parties must assent to the written agreement, usually by "signing and delivery." *Scaife*, 100 F.3d at 411 (citing *Simmons and Simmons Constr. Co. v. Rea*, 286 S.W.2d 415, 418 (Tex. 1955)).

Here, the credible evidence establishes that PPC neither signed nor delivered the NDA to ARDT.[3]  Although ARDT signed the NDA and returned it to PPC in anticipation of executing a manufacturer's sales agreement, neither PPC nor ARDT executed or came to terms on the Underlying Agreement that was unambiguously required by the NDA.[4]  Accordingly, there was no "manifestation of assent" by the parties and, consequently, no contract formed as a matter of law.  *See Scaife*, 100 F.3d at 411; *compare with Spectrum Creations, L.P. v. Carolyn Kinder Intern., LLC*, SA-05-CV-750-XR, 2008 WL 416264, at *58 (W.D. Tex. Feb. 13, 2008) (assent manifested despite lack of signature where parties began performing under the contract and

---

[3] Ex. A, ¶'s 11, 25;Ex. A-1; Ex. B, ¶ 12.
[4] Ex. A, ¶'s 14-24; Ex. B, ¶ 25, 27-28, 29; Ex. C – 30:15-32:25; Ex. E.

represented to third party the contract was in effect).  Here, however, no performance by either

PPC or ARDT occurred.[5]  For these reasons, this Court should grant ARDT summary judgment.

      **C.**     ***Summary judgment is appropriate because a contract was not formed between PPC and ARDT, as the parties failed to agree to the essential terms of the agreement and did not enter into the required separate written agreement defining the essential terms of the contract***

For an alleged contract to be enforceable, Texas law requires a contract to "address all of

its essential and material terms with 'a reasonable degree of certainty and definiteness.'"  *Fischer*

*v. CTMI, L.L.C.*, 479 S.W.3d 231, 237 (Tex. 2016) (citing *Pace Corp. v. Jackson*, 155 Tex. 179,

284 S.W.2d 340, 345 (1955)).  Further, "[i]t is well settled law that when an agreement leaves

material matters open for future adjustment and agreement that never occur, it is not binding

upon the parties and merely constitutes an agreement to agree."  *Fischer*, 479 S.W.3d at 237

(citing *Fort Worth Indep. Sch. Dist. v. City of Fort Worth*, 22 S.W.3d 831, 846 (Tex. 2000)).

The question of whether an alleged contract is sufficiently definite as to be enforceable is a

question of law for the Court.  *APS Capital Corp. v. Mesa Air Group, Inc.*, 580 F.3d 265, 271

(5th Cir. 2009).

Here, the NDA that PPC alleges is an enforceable contract provides that an essential

term, "Work," will be supplied by a separate Underlying Agreement:

> "**In consideration for the Company's contracting with the Contractor to perform the Work** (defined below) for the Company and agreeing to provide the Contractor with Confidential Information (defined below) **to the extent necessary to perform the Work**, Contractor agrees as follows:
>
> 1. *Definitions*. As used in this Agreement:
>
> a. **'Work'** means the products and/or services that Contractor has agreed to provide to the Company pursuant to an agreement entered into between the Company and Contractor contemporaneously with this Agreement ('Underlying Agreement')."

---

[5] Ex. A, 24, 26, 28; Ex. B, ¶  27; Ex. C – 30:15-32:25.

(Ex. A-1) (emphasis added).  The parties never defined the "Work", because the parties never reached the "Underlying Agreement."[6]

The term "Work" is material, because it defines the parties' roles and obligations.  *See T.O. Stanley Boot Co., Inc. v. Bank of El Paso*, 847 S.W.2d 218, 221 (Tex. 1992) ("In order to be legally binding, a contract must be sufficiently definite in its terms so that a court can understand what the promisor undertook."); *Conner v. Lavaca Hosp. Dist.*, 267 F.3d 426, 433 (5th Cir. 2001) (recognizing an employee's duties are an essential element of an employment contract).  Because the parties did not enter into the Underlying Agreement and did not reach a meeting of the minds as to the scope of ARDT's Work, the Court should hold the NDA is not sufficiently definite as to be enforceable.  *APS Capital*, 580 F.3d at 271.  For these reasons, the Court should grant ARDT summary judgment.

### D.     *Alternatively, summary judgment is appropriate because the NDA lacks consideration by PPC, a therefore a contract was not formed between PPC and ARDT*

A contract must be supported by adequate consideration, which "is a present exchange bargained for in return for a promise." *Roark v. Stallworth Oil & Gas, Inc.*, 813 S.W.2d 492, 496 (Tex. 1991).  A contract lacking consideration is unenforceable because it is missing mutuality of obligations between the parties.  *Robert L. Crill, Inc. v. Bond*, 76 S.W.3d 411, 418 (Tex. App.—Dallas 2001, pet. denied).  Whether a contract is supported by consideration is a question of law for the Court.  *Plains Builders, Inc. v. Steel Source, Inc.*, 408 S.W.3d 596, 602 (Tex. App.—Amarillo 2013, no pet.)

PPC's sole allegation against ARDT is that it breached the NDA by disclosing confidential and proprietary information and assisting other Defendants to "distribute and manufacture" "pulsation control products in competition with PPC."  (Dkt. #73, ¶ 103).  PPC

---

[6] Ex. C – 30:15-32:25; Ex. E, 180:22-181:7.

alleges that "[a]s early as July 2013, PPC (through J. Manley) had engaged ARDT to be its sales representative in the pulsation control industry.  (Dkt. #73, ¶48).  ARDT denies both that it received confidential information and that any information received was used or disclosed for any purpose.  PPC's contention that ARDT was "engaged as its sales representative" is not supported by credible evidence, because there was no consideration for any such agreement.  To the contrary, PPC itself disputes the contention:

> "Q. Has PPC ever engaged ARDT to be PPC's sales representative?
>
> A. As I've stated before, we tried and something broke down in that effort, so it was not successful.
>
> Q. So the answer is no?
>
> A. As I've said, no."
>
> (Ex. C – 30:15-32:25; *See also* Ex. E, 180:22-181:7).

As established above, the parties did not enter into an Underlying Agreement defining the 'Work' to be performed by ARDT.  For this reason, there was no consideration supporting the NDA, and summary judgment is appropriate.

Further, even had the Work had been defined and agreed by the parties, there is no credible evidence of any consideration PPC provided to ARDT in exchange for such Work.  In particular, PPC did not provide any confidential or proprietary materials to ARDT, and did not provide money or services to ARDT.[7]  For these additional reasons, the Court should hold there is no enforceable contract between PPC and ARDT, and should grant ARDT summary judgment as to PPC's sole claim for breach of contract.

Further, the information provided to ARDT does not constitute "Confidential Information."  The NDA defines "Confidential Information" as follows:

---

[7] (Ex. A, ¶'s 7-9, 18-19, 27, 30-31; Ex. B ¶'s 8-10, 13, 19, 22, 28, 35-38; (Ex. A, ¶ 28; Ex. B, ¶'s 27, 29; Ex. C – 30:15-32:25).

i. "Confidential Information" means all tangible embodiments of technical information relating to the [PPC], its business, products, customers, consultants, suppliers or contractors: (a) which [ARDT] knows or reasonably should know are considered by the [PPC] to be confidential and/or which are marked with the words "Confidential", "Proprietary" or any other designation of confidentiality; and (b) which are not in the public domain.[8]

Accordingly, Confidential Information must be tangible material marked "confidential" or "proprietary," or be tangible material that ARDT knew or should have known was confidential.  Further, the claimed Confidential Information cannot already be public.

Here, the only tangible materials provided by PPC to ARDT after ARDT signed the NDA were sent from Justin Manley (at the time a PPC salesman) on behalf of PPC to Dave Denning, ARDT's Vice President are known.[9]  Such materials included:

(1)     October 21, 2014 – "Pages from catalogue-2.pdf," from a company not involved in this lawsuit, Accumulators, Inc. (February 27, 2014; Exhibit 14 to the Declaration of Denning);

(2)     ARDT Training Presentation - September 12, 2013.  (September 12, 2014, Exhibit 15 to the Declaration of Denning); and

(3)     some "old sales materials" and "marketing material," all sent from Manley to ARDT via email on July 23, 2013, containing:

(a)     PPC Sales Presentation (Drilling).pptx;[10]

(b)     Drilling Presentation Script.docx Exhibit 4;[11]

(c)     Comparison - Cellular Suction Stabilizer vs Gas Charged Bladder Type 10-29-04.pdf;[12]

(d)     Comparison - Cellular vs Air Tank 05-11-05.pdf;[13] [EXHIBIT 7]

(e)     Comparison - PPC Reactive vs Gas Charged 11-01-04.pdf;[14]

(f)     Comparison - PPC Reactive vs Hydril Reactive 12-16-04.pdf;[15]

---

[8] Exhibit 1 to Declaration of Denning.
[9] Declaration of Denning, ¶ 30; Declaration of Manley, ¶ 31; Ex. Exhibit D, pp.10, 15).
[10] Exhibit 5 to the Declaration of Denning.
[11] Exhibit 6 to the Declaration of Denning.
[12] Exhibit 7 to the Declaration of Denning.
[13] Exhibit 8 to the Declaration of Denning.
[14] Exhibit 9 to the Declaration of Denning.

(g)     Comparison [sic] - Suction Stabilizers - PPC Cellular vs Gas Charged 10-29-04.pdf;[16]

(h)     PPC-Drilling Cellular Suction Stabilizer - How It Works 04-13-01.pdf;[17]

(i)     PPC-Reactive Dampener - HowItWorks 02-07-06.pdf;[18] and

(j)     Premature Bladder Failure - Bladder Chatter 10-29-04.pdf;[19]

PPC has not produced any additional documents, which it claims are Confidential Information under the NDA.  "If PPC did not admit Request for Admission No. 22, produce all documents reflecting PPC's provision to Advanced Rupture Disk Technology, Inc. of PPC's confidential or proprietary information. ANSWER: Based upon a reasonable and diligent investigation, PPC has produced all available documents responsive to this Request. To the extent additional documents are located, this response will be timely supplemented.").  (Exhibit D – Excerpt - Plaintiff's Fourth Amended Responses and Objections to J Manley's First Request for Production – RFP No. 30):  The documents and their accompanying emails, which are attached as exhibits to the present motion, do not qualify as Confidential Information under the NDA, and should not be consideration supporting the NDA.

None of these materials provided by PPC to ARDT were marked "confidential" or "proprietary."[20]  For this reason, the materials do not qualify as Confidential Information.[21] Further, Justin Manley, the PPC representative who transmitted the materials, did not advise ARDT that any portion of the materials was confidential.[22]  Nor did Manley or ARDT consider

---

[15] Exhibit 10 to the Declaration of Denning.

[16] Exhibit 11 to the Declaration of Denning.
[17] Exhibit 12 to the Declaration of Denning.
[18] Exhibit 13 to the Declaration of Denning.
[19] Exhibit 14 to the Declaration of Denning.
[20] Ex. A, ¶'s 7-9, 18-19, 27, 30-31; Ex. B ¶'s 8-10, 13, 19, 22, 28, 35-38.
[21] Exhibit 1 to the Declaration of Denning.
[22] *Id.*

any of the materials to be confidential.[23]   Accordingly, ARDT did not believe and had no reason

to believe any of the PPC materials were Confidential Information.[24]   For these reasons, none of

the materials provided by Manley to ARDT on behalf of PPC qualifies as Confidential

Information, and transmission of such materials cannot be consideration supporting the

enforceability of the NDA.  Accordingly, the Court should grant ARDT summary judgment.

Additionally, none of the materials qualifies as Confidential Information, because many

were in the public domain, which excludes them as being confidential under the terms of the

NDA.[25]   The "training presentation" Manley created and transmitted from PPC to ARDT was

based on public information, and made by Manley for the purpose of educating ARDT in the

event that the sales relationship was ever formed to communicate the information to potential

customers.[26]   Manley created this training presentation from materials he gathered from publicly-

available information.   Slides 1-4 of Manley's training presentation slide show were taken

directly from PPC's public website.[27].  Manley's terminology in slide nos. 5 and 6 is from a 1991

book written by John Miller, the principal of White Rock Engineering,[28] pages 46, 75, 98, 104,

and 105.  The charts Manley used on slide no. 7 are from John Miller's book, pages 40 and 99.

Accordingly, all of the training presentation Manley provided to ARDT was based on publicly-

available information exempt from the NDA's confidentiality provision.   Mr. Denning's

response to the receipt of the training materials documents his understanding, stating "[t]he

---

[23] Ex. A, ¶'s 12, 18, 21, 27, 31; Ex. B, ¶'s 13, 19, 22, 28,  35-38.
[24] *Id.*
[25] Exhibit 1 to the Declaration of Denning.
[26] Ex. B - Declaration of Manley, ¶ 36.
[27] http://www.performancepulsation.com/resources/brochures
[28] Ex. F; One of PPC's principals, John Rogers, worked for White Rock Engineering immediately before forming PPC, a company that sells products essentially identical to those of White Rock Engineering.  Gregg Mathiak, another principal at PPC, worked for White Rock Engineering while John Rogers was starting PPC and soon left to join PPC.  John Miller was the principal of White Rock Engineering.  John Miller also wrote the seminal book on the reciprocating pump, The Reciprocating Pump.  The author of the sales presentation took the information contained in the presentation directly from the PPC website and from The Reciprocating Pump, a book written by John Miller in 1991.

*general training materials* you put together for me look vastly easier for the other salesmen to process – thank you for that!"[29]

And, the old sales materials and brochures are not confidential information in that they are intended to be public and were, in fact, in the public domain.[30] These "old sales and marketing materials" were dated from 2001 to 2006.[31] Each of the documents attached were intended to be used to communicate to potential customers the benefits of PPC products and services versus competitors and none contained confidential information.[32]

As to all three categories of tangible materials, ARDT had no knowledge nor reason to believe these materials were considered by PPC to be "confidential."[33] Further, ARDT expected the NDA to be inapplicable until and unless an Underlying Agreement was entered into, the NDA was executed by PPC, and delivered.[34] There is no credible evidence to the contrary. For these reasons, none of the materials provided by Manley to ARDT on behalf of PPC qualifies as Confidential Information, and transmission of such materials cannot be consideration supporting the NDA as an enforceable contract. Accordingly, the Court should grant ARDT summary judgment.

### E. *Alternatively, summary judgment is appropriate because the NDA should be cancelled or rescinded for failure of consideration*

Unlike a complete lack of consideration to support the existence of a contract, "a failure of consideration occurs when, because of some supervening cause arising after the contract is formed, the promised performance fails." *Cheung-Loon, LLC v. Cergon, Inc.*, 392 S.W.3d 738, 747 (Tex. App.—Dallas 2012, no pet.); *Bassett v. Am. Nat. Bank*, 145 S.W.3d 692, 696 (Tex.

---

[29] Exhibit 4 to the Declaration of Denning, p.10, ARDT000010.
[30] Exhibit A – Declaration of Manley, ¶ 5.
[31] *Id.*; Exhibits 5-14 to the Declaration of Denning,
[32] Exhibit B – Declaration of Manley, ¶ 5-6.
[33] Ex. A, ¶'s 12, 18, 21, 27, 31; Ex. B, ¶'s 13, 19, 22, 28, 35-38.
[34] *Id.*

App.—Fort Worth 2004, no pet.) (same).  Failure of consideration may occur due to one party's

failure to perform its obligations under the contract.  *McGraw v. Brown Realty Co.*, 195 S.W.3d

271, 276 (Tex. App.—Dallas 2006, no pet.).  Without waiving its argument that no contract was

formed with PPC, ARDT alternatively asserts the NDA fails for lack of consideration.

PPC pleaded that ARDT made certain promises in the NDA with respect to use and

nondisclosure of PPC's Confidential Information.  (Dkt. #73, pp. 15-16).  However, the NDA

states PPC would provide Confidential Information only after the parties agreed on the Work:

> **In consideration for** the Company's contracting with the Contractor to
> perform the Work (defined below) for the Company and agreeing to provide
> the Contractor with Confidential Information (defined below) to the extent
> necessary to perform the Work, Contractor agrees as follows:
>
> 1. *Definitions*. As used in this Agreement:
>
> a. **'Work'** means the products and/or services that Contractor has agreed to
> provide to the Company pursuant to an agreement entered into between the
> Company and Contractor contemporaneously with this Agreement
> ('Underlying Agreement').[35]

Again, the parties never agreed on the scope of the Work, and did not enter into an

Underlying Agreement.

Even assuming the NDA was initially supported by consideration and thereby formed a

contract, the inability of PPC and ARDT to agree on the essential terms of an Underlying

Agreement is a superseding cause of the consideration failing.  ARDT's emails document this

failure, noting, "[f]inally, I think we need to sit down with John [Rogers] and discuss whether

our end goals are aligned before we sign on.  If all we're going to do is build these accounts for

PPC only to have PPC intentionally let our contract expire in a year, then our business goals

---

[35] Exhibit 1 to Declaration of Denning.  (emphasis added); Ex. E, 180:22-181:7.

aren't well aligned."[36]   There is no credible controverting evidence.   Accordingly, this Court should grant ARDT summary judgment as to PPC's sole claim for breach of contract.

## F.   *Alternatively, summary judgment is appropriate because PPC has failed to plead it performed under the NDA, and failed to produce legally sufficient evidence of such performance*

To succeed on its breach of contract claim against ARDT, PPC must plead and prove it performed or tendered performance under the contract.   *Smith Int'l.*, 490 F.3d at 387; *Price v. Appalachian Res. Co*., 496 S.W.2d 136, 139 (Tex. Civ. App.—Tyler 1973, no writ) (recognizing the general rule of Texas law that, "for a plaintiff to have a right of action to enforce performance of the terms of a written contract evidencing concurrent and mutual obligations, he must plead and prove his compliance with his obligations under the contract.").   Here, PPC's live pleading contains no allegation that PPC performed under the NDA, the contract at issue.   (Dkt. #73, pp. 15-16, 27).   Accordingly, PPC has failed to plead the essential elements of a breach of contract claim against ARDT.   Further, even assuming the NDA was an enforceable contract and that PPC had pled that it performed under the NDA, there is no evidence that PPC in fact performed.   For these additional reasons, the Court should grant ARDT summary judgment.

## V.   <u>Request for relief</u>

Defendant Advanced Rupture Disk Technology, Inc. requests that the Court grant summary judgment as to Plaintiff's breach of contract claim; and for such other and further relief, both at law and in equity, to which ARDT may show itself justly entitled.

---

[36] Declaration of Denning, ¶ 22.

Respectfully submitted,

/s/   *Gregory N. Ziegler*
**Gregory N. Ziegler**
Texas Bar No. 00791985
GZiegler@macdonalddevin.com
**William I. Gardner**
Texas Bar No. 24053219
BGardner@macdonalddevin.com
**J. Robert Skeels**
Texas Bar No. 24048802
RSkeels@macdonalddevin.com
**MACDONALD DEVIN, P.C.**
3800 Renaissance Tower
1201 Elm Street
Dallas, Texas 75270
214.744.3300 (Telephone)
214.747.0942 (Facsimile)

**Clyde M. Siebman**
Texas Bar No. 18341600
clydesiebman@siebman.com
**Elizabeth S. Forrest**
Texas Bar No. 24086207
elizabethforrest@siebman.com
**SIEBMAN, FORREST, BURG & SMITH, LLP**
Federal Courthouse Square
300 N. Travis Street
Sherman, Texas 75090
(903) 870-0070 (Telephone)
(903) 870-0066 (Telecopy)

**Attorneys for Defendants**

### CERTIFICATE OF SERVICE

I hereby certify that on November 12, 2018 the foregoing pleading was filed with the clerk of the court for the U.S. District Court, Eastern District of Texas, using the electronic case filing system of the court. The electronic case filing system sent a "Notice of Electronic Filing" to all attorneys of record who have consented in writing to accept this Notice as service of documents by electronic means.

/s/   *Gregory N. Ziegler*
**Gregory N. Ziegler**