IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| PERFORMANCE PULSATION CONTROL, INC.<br>    *Plaintiff*,<br><br>v.<br><br>SIGMA DRILLING TECHNOLOGIES, LLC; INTREPID CONSULTING, LLC; JUSTIN MANLEY; ALLISON MANLEY; WILLIAM GARFIELD; PAMELA GOEHRING-GARFIELD; and ADVANCED RUPTURE DISK TECHNOLOGY, INC.<br>    *Defendants*. | § § § § § § § § § § § § § § § § | CASE NO. 4:17-cv-00450-ALM |

### REPLY IN SUPPORT OF THE PERIPHERAL DEFENDANTS' <u>MOTION FOR SUMMARY JUDGMENT</u>

Peripheral Defendants Alison Manley, William Garfield and Pamela Goehring-Garfield moved for summary judgment as to all of Performance Pulsation Control, Inc.'s (PPC) claims. In response, PPC has not produced credible evidence to support any of the causes of action asserted against the Peripheral Defendants. Peripheral Defendants did not perform acts or occupy positions that support PPC's allegations. In response to Defendants' Motion, PPC moved for dismissal of Pamela Garfield *without* prejudice; the Court should dismiss *with prejudice.*

    **A.**    **Introduction.**  PPC failed to cite relevant, competent, or in many cases *any* evidence to raise a fact question on each of Movants' challenged causes of action. PPC's objections to the Defendants' Statement of Undisputed Facts and citations generally are based on misleading and in some cases objectively false citations to evidence. Within the allowable page limits, Defendants cannot identify each mischaracterization contained with the ninety-three footnotes, but reply as follows:

**B.     Objections to the Declaration of John Rogers.** Movants object to the Declaration of John Rogers as set out in Dkt. # 263, Section II, p.2.

**C.     Response to PPCs Misleading Citations to Evidence.** Without waiving objections to PPC's "Undisputed Facts," Defendants supply the following examples relevant to this reply in addition to those contained within the body.

**1. Page 14, n. 79** - "In addition, the testimony unequivocally established that the CFCK competes with PPC's 'PD,'" is false. PPC's citation is to a *__question__* by PPC's counsel, omitting the full question as well as the witnesses' answer. (omissions italicized). The intentionally misleading citation is an attempt to confuse the terms "PD" and "PPC."

> "Q. And [the CFC Kit] replaces the bladder that is placed in a PD Kit. *Specifically Performance Pulsation Control's PD kit.*
> *A. It would reduce pulsation in any vessel by any manufacturer*."

(Response, [APP00033], p. 41:24-42:6, objections omitted).

PPC admits it never made a 20 gallon bladder, the item the CFC Kit replaces and which is referenced in the above testimony. (Dkt. # 252, Ex. 1, 298:5-299:5; Ex. 6, 179:14-22).

**2.** PPC objected to Defendants' paragraph 10 of Defendants Undisputed Facts, reading, "[w]hen William Garfield's employment at PPC ended, he returned all PPC-related material in his possession to PPC." (Defendants' citation: "Q. Did you return to PPC all written materials, electronic materials, as of the last day of your employment? A. Yes." (Motion, Ex. D, 143:22-25). PPC's citation omits testimony contradicting the proposition for which it is cited:

> "Q.··This design is – This unit is designed to fit up with PD20 covers.
>  A.  That could mean a PPC cover. *It could mean a Hydril cover. As I said in the past, I believe that one size collar fits all.*" (Response, n. 2,)."

As in the previous omitted citation, the implication made by PPC is that "PD" cannot mean "pulsation dampener" and can only mean "PPC pulsation dampener," an implication

directly contradicted by the omitted portions of PPC's cited testimony. (*See also*, Dkt. 252, Ex. 5 –Depo of Garfield, 64:17 (Q. "...Mattco PD"); 66:20 (Q...."any manufacturer's PD Kit"); 67:4-5 (Q. "Mattco's PD type Unit").

**3. Page 5, No Citation -** "These products are directly competitive with PPC products." This is disputed. PPC's counsel and PPC's expert admit that the CFC Kit is not competitive with a PPC pulsation dampener steel vessel, as opposed to the 20 gallon rubber bladder. (Dkt # 231, ¶¶ 18-28).

**4. Page 5, n. 18** – "In April of 2014, J. Manley, with the assistance of W. Garfield, formed a competing company, Sigma." The cited evidence contains no reference to William Garfield and competition is disputed.

**5. Page. 5, n. 20, 21 -** "They [Garfield & Manley] then filed Patent Applications for these products and actively concealed this venture from PPC." The cited evidence contains no reference to William Garfield.

**6. Page 5, n. 22** "J. Manley admitted that during his employment with PPC, he developed, manufactured, and distributed for sale oil and gas equipment products known as 'CFC Kits,' and 'Acoustic Assassin.'" PPC's citation as to Justin Manley's "admission" is to the Declaration of John Rogers to which Defendants object as conclusory and not based upon personal knowledge. Justin Manley has not admitted, and specifically denies, that Sigma sold any product other than a 20 gallon CFC Kit during employment, including the Acoustic Assassin, and PPC cites no competent evidence to the contrary. (Dkt # 231, Ex. 9, ¶ 5).

**7.** The unsupported and in some cases objectively false statements repeated in Section C of PPC's response are addressed in detail in Section IV(C)(2) of Dkt. #252.

**D.     Trade Secrets Misappropriation.**  PPC pled a claim for trade secret misappropriation against Alison Manley and William Garfield under the Texas Uniform Trade Secrets Act. (Dkt. #73, pp. 21-22). To prevail on a cause of action for trade secret misappropriation against these parties, PPC must prove as to both individuals: (1) PPC owned a trade secret; (2) the individual Defendant misappropriated the trade secret; and (3) such misappropriation caused PPC injury. TEX. CIV. PRAC. & REM CODE §§ 134A.002(1), (3), (6); 134A.004(a) (Vernon 2013). In order to demonstrate that William Garfield or Alison Manley misappropriated a trade secret, PPC must prove that each Defendant either acquired a trade secret or that each Defendant used or disclosed a trade secret without PPC's consent, both of which require knowledge of an improperly obtained trade secret. TEX. CIV. PRAC. & REM. CODE §134A.002(3). PPC has supplied evidence of neither.

**1.     Element (2) - Defendant misappropriated the trade secret.** <u>Alison Manley</u> – The documents PPC cites in support of Alison Manley's "misappropriation" are emails sent during her employment with PPC in furtherance of her work for PPC. (Response, n. 42). PPC (John Rogers) testified PPC's claims against her are based solely upon his contention that she "sent to herself PPC's confidential and [PPC's] trade secret information." (Dkt. #239, Exhibit K, p. 69:24-70:9). PPC cited no evidence the emails were sent, disclosed, or used by anyone other than PPC employees during her employment. Alison Manley testified she sent these emails during her employment and at the express direction of John Rogers in connection with her work on a project to consolidate Microsoft Outlook Contacts. (Dkt. #239, Ex. E, 67:3-69:20). Rogers does not controvert Mrs. Manley's testimony because he did "not recall one way or the other" whether these emails were legitimately sent in furtherance of Mrs. Manley's work for PPC. (Dkt. #239, Exhibit K, p. 69:24-70:9). Further, Rogers could identify no other alleged wrongdoing.

(Dkt. #239, Exhibit K, p. 69:24-70:10). The evidence establishes that the specified emails were sent not only with consent, but at the direction of PPC. PPC identified no evidence to the contrary and no evidence supporting Mrs. Manley's use or disclosure of such information.

<u>William Garfield.</u> PPC claims "[i]n this position, [Garfield] was provided with technical specifications of the PPC bladder system, pricing of the components, and other confidential information related to PPC's products." (Response, n. 44). The citation has no relevance to William Garfield or PPC's contentions that he was provided any such information. "Indeed, the sole source of information that W. Garfield needed to assist in the development of the CFCK came directly from J. Manley while he was employed by PPC." (Response, p. 9, n. 47, [APP00041]). The citation mischaracterized and omits the following italicized testimony, "A. Well, you can also -- that was a source. *You can also find information on this on the Internet.*").

The sole evidence identified by PPC in support of William Garfield's "misappropriation" of PPC information is a "sketch" sent by J. Manley. [12] PPC's characterization is directly contrary to the evidence citation: PPC states. "[Garfield] developed this system, at least in part, based upon PPC's sketches and drawings based on PPC's proprietary pulsation dampener product sent to him by J. Manley." (Response at 9, n. 46 [APP000038-000039]). PPC cites no evidence that PPC information was contained in the "sketch." Mr. Garfield received a "very crude" "sketch" of a "lip," not a "drawing" of a "PPC proprietary pulsation dampener product."

---

[1] In this section, although not relevant to Movants, PPC also states that "J. Manley also shared specific technical information about PPC's products with ARDT in order to assist in ARDT's representation of Sigma in selling Sigma products. [Response, n. 48]. But, PPC admits that the information is publically available. (Dkt. # 252, Ex. 18). (Dkt. # 252, Ex. 29, 85:1 – 87:6).

[2] Also without relevance to the relief sought herein, PPC cites testimony contending that Garfield testified that the CFC Kit and "PD bladder" do basically the same thing. (APP000215, p. 215:1-11) Mr. Garfield does not use the term "PD bladder," but rather "bladder" and the context makes clear that the term "PD" is not specific to PPC. "The PD units....regardless of the manufacturer." PPC admits it never made a 20 gallon bladder. (Dkt. # 252, Ex. 1, 298:5-299:5; Ex. 6, 179:14-22).

(Response, APP00040 - 48:12-14); (Motion, Dkt. #252, Ex. 5, 50:15-21). Mr. Garfield did not know the source of the sketch – "The sketch that I received did not have any kind of identification as to what kind of pulsation device it came of. It was a sketch of a collar and a radius." (Motion, Dkt. #252, Ex. 5, 69:14-22). Mr. Garfield's understanding was that "the whole project was focused on Hydril, because again, I was told that there is a larger population of those items and, therefore, more opportunities for -- you know, for market." (Response, APP000039, 47:3-6 (uncited by PPC). (See also, Response at [APP00034] (uncited by PPC); p.42:8-13 ("I always believed I was working on a Hydril unit;)" p, 42:17-20 ("Q. Was it designed to fit in the PD Unit 20-gallon? A. Not specifically, no.").

Mr. Garfield received a hand drawn "very crude" sketch of the lip of what he believed to be a Hydril (Not PPC) pulsation dampener, which is easily discoverable information. (Motion, Dkt. #225, Ex. D, 50:15-21). Hydril created the original K-Style dampener in the 1950's (Dkt. #252, Ex. 9, ¶ 12; Ex. 7, 113:4-14; Ex. 8, 37:15-38:3; Ex. 1, 273-274; Ex. 6, 120:24-122:18). PPC obtained a Hydril K-Style Dampener vessel to measure the dimensions to make their K-Style copy. (Dkt. #252, Ex. 6, 120:10-19). PPC named its copy of the Hydril K-Style dampener the "PD20" in 2012. (Dkt. #252, Ex. 6, 120:24-122:18). PPC's "PD20" is the product of a reverse engineered Hydril "K20." (Dkt. #252, Ex. 29, 76:19-21). The information required to create the neck of the CFC Kit is easily discoverable "with a measuring tool." (Dkt. #252, Ex. 1, 292:21-293:5). The internal depth of a K-style dampener is easily discoverable "with a measuring tool." (Dkt. #252, Ex. 1, 292:21-293:5). In sum, PPC's sole cited evidence expressly contradicts that 1) the "sketch" contained any PPC information; 2) William Garfield had any knowledge of the source; or 3) William Garfield obtained the sketch through improper means.

  **2.**   **Element (3) - such misappropriation caused PPC injury.** Neither PPC nor their expert has identified damages attributable to either Alison Manley or William Garfield in their testimony, expert report, or response. Further, no proximate cause can be established between PPC's undefined damage and 1) Alison Manley's emails sent in the course of work prior to the formation of Sigma or 2) receipt of a crude sketch of unknown origin by William Garfield. PPC's claims pursuant to TUTSA against Movants must be dismissed.

  **D.**   **Unfair Competition.** PPC cannot maintain a cause of action against William Garfield for "unfair competition" because it is not a cause of action recognized by Texas courts, but rather an "umbrella for all statutory and non-statutory causes of action arising out of business conduct which is contrary to honest practices in industrial or commercial matters." *U.S. Sporting Prods., Inc. v. Johnny Stewart Game Calls, Inc.*, 865 S.W.2d 214, 217 (Tex. App.—Waco 1993, writ denied) (quoting *Am. Heritage Life Ins. Co. v. Heritage Life Ins. Co.*, 494 F.2d 3, 14 (5th Cir. 1974)). The concept of unfair competition includes several causes of action including passing off/palming off and trade secret misappropriation, to name only a few. *Id.* Regardless, William Garfield was not employed by PPC during the time PPC alleges unfair competition, and there is no evidence of any post-employment contractual obligation not to compete with PPC. Further, John Rogers, PPC's corporate representative, testified that he is not aware of any such market confusion that could support such a claim. (Ex. 1 to this Reply – Deposition of John Rogers, p. 77:9-78:5). For these reasons, this Court should grant William Garfield summary judgment as to PPC's unfair competition claim.

  **E.**   **Civil Theft - William Garfield and Alison Manley.** Although PPC makes blanket statements in its response, it has failed to identify any evidence to controvert Defendants' evidence on any element of civil theft including: (1) PPC had a possessory right to property; (2)

each Defendant unlawfully appropriated, secured, or stole PPC's property; (3) the Defendant's unlawful taking was made with the intent to deprive PPC of property; and (4) PPC sustained damages as a result of the alleged theft. TEX. CIV. PRAC. & REM. CODE §§ 134.002(2), 134.003, 134.005 (Vernon 1989); TEX. PEN. CODE §§ 31.03(a), (b)(1), 31.04(a) (Vernon 2011). PPC's claim for civil theft against William Garfield and Alison Manley fails because PPC failed to cite any evidence and cannot raise an issue of material fact as to elements two, three, or four of its claim with regard to the these defendants. Further, PPC has neither identified nor cited evidence of the "property" sufficient to allow and a determination as to whether element one can be met.

  **F. Conversion - William Garfield.** PPC has cited no evidence and failed to controvert Defendants' evidence on any element of its claim for conversion against William Garfield, specifically including that: (1) PPC owned, possessed, or had the right to immediate possession of personal property; (2) William Garfield unlawfully and without authorization assumed and exercised control over the property to the exclusion of, or inconsistent with, PPC's right as an owner; (3) PPC demanded return of the property from William Garfield; and (4) William Garfield refused to return the property. *Lawyers Title Co. v. J.G. Cooper Dev., Inc.*, 424 S.W.3d 713, 718 (Tex. App—Dallas 2014, pet. denied). PPC's claim fails because there is no genuine issue of material fact as to elements two, three and four of this cause of action. Further, PPC failed to provide evidence of "personal property" sufficient to allow and a determination as to whether element one can be met.

  **E. Declaratory Relief for Ownership of "Work For Hire" Trade Secrets – William Garfield & Alison Manley.** There is no basis in law to obtain ownership of a trade secret of which an employer has no knowledge pursuant to the "Work for Hire" doctrine of the Copyright Act, as argued more fully in Dkt. # 252, p. 8, IV(B)(4). Further, PPC has failed to

address or cite either evidence or law in support of this claim for relief in its response. Additionally, PPC has failed to controvert that movants were not employed by PPC at the time of the creation of Sigma's trade secrets.

   **F.**  **Declaratory Relief for Ownership of Copyright.** PPC has pleaded claims for declaratory **relief** under the Copyright Act, alleging PPC is the owner of certain copyrights under "derivative works" and "works made for hire" theories. (Dkt. #73, pp. 16-20). PPC has failed to provide the Court with clear guidance as to which parties against whom it seeks declaratory relief. Instead, PPC has muddled its own claims by inconsistently referring to different groups of defendants within the same causes of action that seek declaratory relief. (Dkt. #73, ¶¶ 54-57, 72-73). Nevertheless, because PPC's claims are not viable with respect to the Peripheral Defendants, this Court should grant summary judgment as to those claims.

   **1.**  **"Derivative Works."** PPC admits it is not the author of any alleged original work from which a derivative work was created. (Dkt. #230, pp. 15-17; Dkt. #73). PPC admits that both the "original works" and the "derivative works" were authored by Justin Manley. *Id.* PPC provides the court with no evidence that William Garfield or Alison Manley authored any "original" or "derivative" copyrightable works. PPC provides the court with no evidence in support of its claim that any work is derivative of a PPC-authored original work. Accordingly, the Court should dismiss PPC's claims as to movants, and as to all defendants.

   **2.**  **"Work for Hire."** William Garfield was not employed in any capacity by PPC at the time any alleged "copyrightable work" was authored. With regard to Garfield, PPC claims only that Justin Manley "with the assistance of W. Garfield and A. Manley" prepared "invention disclosure documents" and "patent applications." (Response, p. 16). However, PPC cites no evidence supporting that Garfield 1) was employed by PPC at the time he allegedly "assisted

Manley;" or 2) that Garfield authored any work the subject of PPC's claims. The undisputed evidence establishes that Garfield was not employed at the time. (*See* e.g. Dkt. #73, ¶ 41, Dkt. # 225, Ex. A, ¶¶ 2-3). In its response, PPC also implies for the first time that *Sigma's* marketing brochures were prepared in the scope of Alison Manley's work with *PPC*. PPC has not pled nor alleged ownership of Sigma's marketing materials. PPC states, "[t]he evidence further shows that, "while A. Manley was working for PPC, she created brochures and marketing material for Sigma." (Response, p. 16). This statement is false as the cited testimony does not suggest that Mrs. Manley created marketing materials "while working for PPC." PPC's cited evidence reads: Q. Okay. What type of freelance work do you do for Sigma? A. I work on the website, and I do some e-mail campaigns and brochures. (Response, p. n. 92). In fact, the undisputed evidence demonstrates that Mrs. Manley was unaware of the existence of Sigma and performed no work for Sigma until her employment with PPC ended in October of 2014. (Dkt. #225, Ex. E, 180:11-24, Ex. C. ¶ 6). Further, PPC could identify no other alleged wrongdoing, including any information to support a claim of civil theft or declaratory relief pursuant to the Copyright Act. (Dkt. #239, Exhibit K, p. 69:24-70:10). "Q. Other than sending e-mails to herself, what else did she do wrong? A. I don't recall at this time." (Dkt. #239, Exhibit K, p. 69:24-70:10).

    **G. Conclusion.**

    **WHEREFORE, PREMISES CONSIDERED,** Defendants Alison Manley, William Garfield, and Pamela Garfield pray that the Court grant their Motion for Summary Judgment, enter an Order dismissing with prejudice all of PPC's claims against them, and for general relief.

Respectfully submitted,

| | |
|---|---|
| /s/   *Gregory N. Ziegler*          | **Clyde M. Siebman** |
| **Gregory N. Ziegler** | Texas Bar No. 18341600 |
| Texas Bar No. 00791985 | clydesiebman@siebman.com |
| GZiegler@macdonalddevin.com | **Elizabeth S. Forrest** |
| **William I. Gardner** | Texas Bar No. 24086207 |
| Texas Bar No. 24053219 | elizabethforrest@siebman.com |
| BGardner@macdonalddevin.com | SIEBMAN, FORREST, BURG & SMITH, LLP |
| **J. Robert Skeels** | Federal Courthouse Square |
| Texas Bar No. 24048802 | 300 N. Travis Street |
| RSkeels@macdonalddevin.com | Sherman, Texas 75090 |
| **MACDONALD DEVIN, P.C.** | (903) 870-0070 (Telephone) |
| 3800 Renaissance Tower | (903) 870-0066 (Telecopy) |
| 1201 Elm Street | |
| Dallas, Texas 75270 | **Attorneys for Defendants** |
| 214.744.3300 (Telephone) | |
| 214.747.0942 (Facsimile) | |

### CERTIFICATE OF SERVICE

I hereby certify that on December 6, 2018 the foregoing pleading was filed with the clerk of the court for the U.S. District Court, Eastern District of Texas, using the electronic case filing system of the court. The electronic case filing system sent a "Notice of Electronic Filing" to all attorneys of record who have consented in writing to accept this Notice as service of documents by electronic means.

/s/   *Gregory N. Ziegler*          
**Gregory N. Ziegler**