IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| PERFORMANCE PULSATION CONTROL, INC. <br> *Plaintiff*, <br><br> v. <br><br> SIGMA DRILLING TECHNOLOGIES, LLC; INTREPID CONSULTING, LLC; JUSTIN MANLEY; ALISON MANLEY; WILLIAM GARFIELD; PAMELA GOEHRING-GARFIELD; and ADVANCED RUPTURE DISK TECHNOLOGY, INC. <br> *Defendants*. | § § § § § § § § § § § § § § § | Civil Action No. 4:17-cv-00450-ALM <br><br> JURY |

### DEFENDANT ADVANCED RUPTURE DISK TECHNOLOGY, INC.'S REPLY TO PLAINTIFF'S RESPONSE TO ARDT'S MOTION FOR SUMMARY JUDGMENT

Defendant Advanced Rupture Disk Technology, Inc. (ARDT) provides further briefing in support of its summary judgment motion seeking dismissal of Plaintiff Performance Pulsation Control, Inc.'s (PPC) sole cause of action against ARDT for breach of contract, and shows:

### Introduction

1. Because no consideration exists and because the material terms of the alleged contract are undefined, PPC's breach of contract claim against ARDT should be dismissed. In PPC's Response to ARDT's Motion, PPC does not contend that the terms of the disputed Noncompetition, Confidentiality, and Invention Agreement (NDA) are ambiguous, and therefore, this Court must interpret the parties' intent as a matter of law.[1] (Response at 24, ¶ 2). Because the only reasonable interpretation of the parties' intent was to enter into a mutually

---

[1] *MCI Telecomms. Corp. v. Tex. Utils. Elec. Co.*, 995 S.W.2d 647, 650 (Tex.1999).

beneficial Manufacturer's Sales Representation Agreement (MSRA), the court need not look further than the first two sentences of the NDA to grant summary judgment in favor of ARDT.

2. Among the material defined terms left undefined in the NDA is "Work." The express terms of the disputed NDA required a "contemporaneous Underlying Agreement," which would define the "Work" between PPC and ARDT. All parties acknowledge that the terms of an MSRA could not be agreed upon and the PPC-ARDT sales relationship never formed. In its response, PPC contends for the very first time[2] that the MSRA was not (or not *necessarily*) the "Underlying Agreement." Instead, PPC now contends that the Underlying Agreement was a "verbal agreement" that PPC's President, John Rogers, believed may have existed at some time in 2013. But, PPC cites no evidence in support of the specific contention that a "verbal agreement" was the Underlying Agreement.

> "Based upon my review of other emails between Justin Manley and representatives of ARDT, *it appears* there was a verbal agreement between Justin Manley on behalf of PPC and Michael Kelly and/or Dave Denning on behalf of ARDT to begin the early work of providing services to PPC before a formal written agreement could be reached..."

(Rogers' Supplemental Decl., Resp. at APP00017, emphasis added, partial citation).

3. PPC requests the Court accept as true John Rogers' speculative legal conclusion that, based upon his reading of emails in December of 2018, a "verbal agreement" *may* have been entered into sometime in 2013. Citing no evidence, including the Rogers Declaration, PPC's response states, "[s]pecifically, the Manufacturer Representatives Sales Agreement ("MRSA") [sic] was not the Underlying Agreement referenced by the Non-Competition Agreement." [3] (Response, p. 4, ¶ 3; p. 6, ¶ 3). PPC's response does not cite the Rogers Declaration, made

---

[2] The "apparent" verbal agreement has never before been disclosed over the course of seven depositions of PPC and ARDT employees or in written discovery.

[3] Elsewhere in its Response, PPC softens the statement: "the 'Manufacturer's Sales Representation Agreement' ("MRSA") [sic] referenced by ARDT was not *necessarily* the Underlying Agreement." (Response, p. 4, ¶ 3, emphasis added).

under penalty of perjury, because Rogers' Declaration makes no such contention. The MSRA was the Underlying Agreement as conclusively established by the uncontroverted evidence. (Dkt. # 226, Ex. A, Declaration of Denning, ¶¶ 14, 15 22 -26; Dkt. #226, Ex. B, Declaration of Manley, ¶¶ 15, 16, 23, 24; Ex. 2 to Exhibit A – MSRA, Version 1, 8-1-13; Dkt. # 226, Ex. 3 to Exhibit A – MSRA, Version 2, 9-1-13).

4. In September of 2018 (prior to ARDT's summary judgment motion), Rogers did not disclose the theoretical verbal agreement. Rogers testified:

> **"Q. Has ARDT ever been a sales representative of PPC?**
> A. No."
> 
> ***
> 
> **"Q. Has PPC ever engaged ARDT to be PPC's sales representative?**
> A. As I've stated before, we tried and something broke down in that effort, so it was not successful."
> 
> **Q. So the answer is no?**
> A. As I've said, no."

(Motion, Dkt. #226, p. 13).

5. Rogers' previously-undisclosed claim of a verbal agreement fails to identify an offer, acceptance, tendered or actual performance, a meeting of the minds, mutual assent to be bound, consideration, terms (material or otherwise), or the date on which the agreement occurred. Rogers does not even identify the parties to the hypothetical verbal agreement: "Justin Manley on behalf of PPC and Michael Kelly *and/or* Dave Denning." (Response, at APP00017, emphasis added, partial citation). Rogers' mere speculation is not evidence.

6. **Objections to the Original and Supplemental Declarations of John Rogers.** Defendant objects to the Declaration of John Rogers (Response, [APP001]) as set out in Dkt. # 263, Section II, p.2. Defendant also objects to the Supplemental Declaration of John Rogers (Response, [APP0016]) as follows: ¶ 4 – Conclusory, speculative, not based upon personal knowledge, improper legal conclusion, best evidence; sham; ¶ 5 – Conclusory, lack foundation; ¶ 6 -

Conclusory, not based upon personal knowledge; ¶ 7 - Conclusory, not based upon personal knowledge; ¶ 8 – improper legal conclusion, conclusory; ¶ 9 – Improper legal conclusion, conclusory, speculative; not based on personal knowledge; ¶ 10 – Conclusory, speculative, not based on personal knowledge; ¶ 12 – Conclusory.

7. **Arguments & Authorities.** When the terms of a contract are not ambiguous, a court determines the parties' intent to contract as a question of law. *MCI Telecomms. Corp. v. Tex. Utils. Elec. Co.*, 995 S.W.2d 647, 650 (Tex.1999). If a contract "is worded so that a court can give it a certain or definite legal meaning or interpretation, it is not ambiguous." *Id.* Whether a contract is ambiguous is a question of law for the court to decide. *Mount Spelman & Fingerman, P.C. v. GeoTag, Inc.*, 70 F. Supp. 3d 782, 787 (E.D. Tex. 2014). A contract is not ambiguous if it can be given certain or definite legal meaning or interpretation. *Lopez v. Munoz, Hockema & Reed, L.L.P.*, 22 S.W.3d 857, 861 (Tex. 2000). Ambiguity does not arise simply because the parties advance conflicting interpretations of the contract; rather, for an ambiguity to exist, both interpretations must be reasonable. *Columbia Gas,* 940 S.W.2d at 589; *National Union Fire Ins. Co. v. CBI Indus., Inc.,* 907 S.W.2d 517, 520 (Tex.1995). Courts should not strain to find an ambiguity, if, in doing so, they defeat the probable intentions of the parties, even should an apparently harsh result be the consequence. *Ohio Cas. Group of Ins. Companies v. Chavez*, 942 S.W.2d 654, 658 (Tex. App.–Houston [14th Dist.] 1997, writ denied). The court must enforce the unambiguous language in a contract as written, and the applicable standard is the "objective intent" evidenced by the language used, rather than the subjective intent of the parties. *Sun Oil Co. v. Madeley,* 626 S.W.2d 726, 731–32 (Tex. 1981).

8. The objective intent of the parties was to enter into a Manufacturer's Sales Representation Agreement in which both parties would benefit. PPC would benefit by selling products; and ARDT would benefit by earning commissions. This is the "Work" to be defined

by the "Underlying Agreement." Importantly, the negotiated but unconsummated MSRA that PPC contends was not the Underlying Agreement does in fact define the Work:

> "PERFORMANCE PULSATION CONTROL shall provide ARDT with advertisements, catalogs, promotional material, technical, engineering, sales and marketing training and assistance and other sales and marketing material as PERFORMANCE PULSATION CONTROL believes to be reasonably necessary to assist ARDT in the promotion of the products and the performance of ARDT's other duties hereunder; and pay commissions to ARDT in accordance with the provisions contained in this Agreement."

(*See, e.g.* Dkt.#226, Ex. 2 (Version 1), 3 (version 2), to Exhibit A, "Manufacturer's Sales Representation Agreement, Section 3 RESPONSIBILITIES OF THE PARTIES.").

9. PPC argues the reasonable interpretation of ARDT's objective intent in signing the agreement had nothing to do with the MSRA. Instead, PPC argues, the primary intent of the agreement was the provision of "confidential information" and the agreement to keep the information confidential. This requires the court to find ambiguity where none exists, despite PPC's agreement that the terms are unambiguous. (Response at 24).

10. **Reasonable Interpretation.** Because PPC does not contend that the terms are ambiguous, the Court must determine the parties' intent as a matter of law. *SAS Institute, Inc. v. Breitenfeld,* 167 S.W.3d 840, 841 (Tex. 2005). (Response at 24). In order to deny ARDT's motion, the court must find that PPC's interpretation of the following terms are reasonable:

> **A. Sentence One of the NDA:** *"In consideration for the [PPC's] contracting with [ARDT] to perform the Work (defined below) for [PPC] and agreeing to provide [ARDT] with Confidential Information (defined below) to the extent necessary to perform the Work, [ARDT] agrees as follows:"*

1) PPC contends that **"[PPC] *contracting with* [ARDT]"** should be interpreted to include an "apparent" (to John Rogers) "verbal agreement" sometime in 2013 between unknown persons and with no known terms based upon Mr. Rogers' reading of emails in December 2018. (Response, p. 3, 6, 22(B), citing Decl. of Rogers, ¶ 4, [APP0016]; Response, p. 4).

2) PPC contends that **"Work (defined below)"** is not defined below as required in the NDA. Rather, PPC contends the term must be defined to mean "any conceivable work," a contention unsupported by a plain reading of the NDA or any other evidence. (*See, e.g.* Response, p. 7 - "ARDT did perform some work").

3) PPC also contends that "**Work (defined below)**" requires no definition and is an immaterial and non-essential term to the contract. (Response, p. 24 – "Put simply, the definition of "Work" is completely immaterial to the parties obligations under the Non-Competition Agreement.") PPC's position that "Work," a capitalized term that was to be defined in the Underlying Agreement is not a material or essential term unreasonable. The NDA is specific in its intent and contains a "Definitions" section, the first term of which is "Work."

4) PPC ignores the phrase **"to the extent necessary to perform the Work"** modifying the phrase "confidential information."

5) PPC contends that **"**[contracting to perform Work] *<u>and</u>* agreeing to provide [ARDT] with Confidential Information (defined below) to the extent necessary to perform the Work" should be interpreted to mean **"**[contracting to perform Work] *<u>or</u>* agreeing to provide [ARDT] with Confidential Information (defined below) to the extent necessary to perform the Work" Under the law of Texas, contract language should be given its "plain grammatical meaning." Simply stated, "or" is disjunctive, or alternative in its effect. *Lyons v. Montgomery,* 701 S.W.2d 641, 643 (Tex.1985). In other words, "or" means or, not "and." *PPG Indus., Inc. v. Shell Oil Co.*, 727 F. Supp. 285, 287 (E.D. La. 1989), aff'd, 919 F.2d 17 (5th Cir. 1990).

6) PPC argues that because the NDA does not explicitly use the words "condition precedent," contracting for work cannot be a condition precedent. (Response at 23-24). The sole authority cited by PPC refutes this contention. "Our task is to construe the entire agreement, and

that task is not altered by the parties' use of "magic words" in the contract or the absence of such words. *Arbor Windsor Court, Ltd. v. Weekley Homes, LP*, 463 S.W.3d 131, 137 (Tex. App.—Houston [14th Dist.] 2015, pet. denied).

> **B. Sentence Two of the NDA:** *Definitions. As used in this Agreement:*
>
> a. *"Work" means the products and/or services that [ARDT] has agreed to provide to [PPC] pursuant to an agreement entered into between [PPC] and [ARDT] contemporaneously with this Agreement ("Underlying Agreement").*

7) PPC contends that **"Work"** is not defined by either the "Underlying Agreement" or by "the products and/or services that [ARDT] has agreed to provide:" Instead, PPC argues that any conceivable definition of "work" will suffice and that "doing exploratory things" would satisfy the definition "Work," an assertion for which PPC cites no evidence. (Response, p. 23 "ARDT did perform some work."). This, despite that "Work" is in fact defined in the unsuccessful MSRA, which supplies the definition of "the products and/or services that [ARDT] has agreed to provide." (*See, e.g.* Dkt. #226, Ex. 2, this Reply, p. 5).

8) By speculating that a "verbal agreement" could have existed, PPC implicitly contends that the terms **"contemporaneously"** and "**has agreed**" should be interpreted to mean "at any time, in hindsight, if at all." PPC makes no reference to either phrase in its Response.

9) PPC contends that the defined, capitalized term **"Underlying Agreement"** for which the parties were to "[contract for]" should be interpreted to mean a "verbal agreement" between unknown persons with unspecified terms based upon Rogers' posthumous email examination.

11. **"Confidential" Documents.** Alternatively, no confidential information was transmitted to ARDT. In its response, PPC amends its position that *all* documents sent to ARDT were "confidential information" and identified three specific documents that were "not in the public domain." (Response, APP0017, Supp. Decl. of Rogers, APP0017, ¶6 - "Of the specific

documents sent…the following documents are not in the public domain.")  Rogers' Declaration thereby excludes the remainder of the documentation from the definition of "confidential information" by the express terms of the disputed NDA. (NDA – Response, APP00109, ¶ 1(d)(i)(b) – "(b) which are not in the public domain").

12. With regard to the three documents Rogers contends are not in the public domain, PPC contends that the boilerplate footer "Confidentiality Notice" that appears on almost every email satisfies both the portion of the agreement stating: 1) "...which are marked with the words 'Confidential', 'Proprietary' or any other designation of confidentiality" and 2) sufficient to put ARDT on notice that the materials were considered confidential. The documents are:

1) "<u>PPC Sales Presentation (Drilling)</u>" – A Microsoft Powerpoint Presentation. Slide 1 – "WELCOME – Performance Pulsation Control would like to take a second and thank you for your time."  (Dkt. # 226, Ex. 5 to Exhibit A).

2) "<u>Drilling Presentation Script</u>" for the presentation. ("Before you get started, I want to thank you for your time today. I understand that you probably have several projects you could be working on, but I'm sure this will be worth your time.) (Dkt. # 226, Ex. 5, 6 to Exhibit A); and

These two documents were in fact transmitted with the boilerplate "confidentiality notice." (Dkt. # 226, Ex. 4 to Exhibit A, ARDT_000012). These documents (a sales presentation), on their face, are intended to be presented to the public. Second, they were transmitted in the same email along with 14 additional documents described in the transmission email as "old sales materials" that PPC does not contend are confidential information. (*Id.;* Response, APP0017, Supp. Decl. of Rogers, APP0017, ¶6). Third, both the recipient and the sender testified that ARDT in fact did not consider nor have any reason to believe that these

materials were "confidential." (Dkt. # 252, Ex. A, ¶ 12; Dkt. # 252, Ex. B, ¶ 13). ARDT submits that PPC has not identified evidence sufficient to raise a fact issue to suggest ARDT "reasonably should have known" PPC considered these documents to be "confidential."

    3) "ARDT Training"

Other than stating that this document was not "in the public domain," PPC supplies no evidence that ARDT should have reasonably known that PPC considered the document to be confidential. (Dkt. # 252, Ex. 15 to Exhibit A). Both the sender and recipient testified that no suggestion of confidentiality was made. (Dkt. # 252, Ex. A, ¶ 19; Dkt. # 252, Ex. B, ¶ 13). Further, unlike most other emails between PPC and ARDT, the email transmitting the document does not contain the standard "confidentiality notice." (Dkt. # 226, Ex. 4 to Exhibit A, ARDT_000010-11). PPC has failed to identify evidence sufficient to raise a fact issue suggesting ARDT should have had a reasonable belief that PPC considered this information to be confidential.[4]

    13. **No evidence of use or disclosure.** In response to Defendant's summary judgment motion and evidence that ARDT did not use or disclose PPC's information, "confidential" or otherwise, PPC supplies no controverting evidence. (E.g. Dkt. # 226, Ex. A, ¶ 31). PPC supplies the following statement, "[t]he evidence further shows that ARDT then disclosed or otherwise used all of the information provided by PPC to aid Manley and Sigma in selling their competitive products and cause injury to PPC." PPC cites no evidence supporting the use or disclosure of a sales presentation or "ARDT Training."

---

[4] Referring to ARDT's production of the email and attachments in May of 2018 under no designation of confidentiality, PPC's response states, "Nevertheless, out of an abundance of caution, as of the date of filing this Response, PPC has designated certain transmitted documents as "Confidential." (Response, n. 32). PPC cited a letter dated December 3, 2018 demanding that Defendants file a motion to seal. the documents it contends are "Confidential" by December 4, 2018, after which PPC would do so. However, PPC neither transmitted the letter nor contacted counsel for Defendants, who were unaware of the letter's existence until the drafting of this reply. (p. 419 of 419 of Plaintiff's response). To date, Plaintiff has not transmitted the letter to Defendants, nor filed a motion to seal and the documents remain publically available.

14. **Lack of Consideration**. Unlike a complete lack of consideration to support the existence of a contract, "a failure of consideration occurs when, because of some supervening cause arising after the contract is formed, the promised performance fails." *Cheung-Loon, LLC v. Cergon, Inc.*, 392 S.W.3d 738, 747 (Tex. App.—Dallas 2012, no pet.); *Bassett v. Am. Nat. Bank*, 145 S.W.3d 692, 696 (Tex. App.—Fort Worth 2004, no pet.)*.* ARDT contends (and the court must interpret) that the intention of the parties was to enter into a MSRA for Work. The inability to agree to the terms of that agreement was a superseding cause of the consideration failing. PPC has not addressed the defense of a lack of consideration in their response.

13. **Conclusion and Prayer.** This Court must interpret the objective intentions of the parties. PPC advances that the intention of ARDT (but not PPC) in signing a "Non-Competition, Confidentiality, and Invention Agreement" was not in anticipation of a mutually beneficial Manufacturer's Sales Representation Agreement. Rather, PCC contends, the agreement related to ARDT's desire to receive PPC's "Sales Presentation" and "ARDT Training." In return, ARDT would agree to, among other things, provide exclusive ownership of ARDT's inventions and enter into no "similar relationship" (verbal according to PPC) with any other company. This absurd interpretation of the parties' intent is neither reasonable nor supported by evidence.

WHEREFORE, ARDT requests the court grant its motion for summary judgment, hold the "Non-Competition, Confidentiality, and Invention Agreement" invalid and unenforceable as a matter of law, dismiss with prejudice all claims against ARDT, award ARDT its reasonable attorneys' fees incurred as result of PPC's baseless claim, and for general relief.

Respectfully submitted,

/s/   *Gregory N. Ziegler*

| | |
|---|---|
| **Gregory N. Ziegler**<br>Texas Bar No. 00791985<br>GZiegler@macdonalddevin.com<br>**William I. Gardner**<br>Texas Bar No. 24053219<br>BGardner@macdonalddevin.com<br>**J. Robert Skeels**<br>Texas Bar No. 24048802<br>RSkeels@macdonalddevin.com<br>**MACDONALD DEVIN, P.C.**<br>3800 Renaissance Tower<br>1201 Elm Street<br>Dallas, Texas 75270<br>214.744.3300 (Telephone)<br>214.747.0942 (Facsimile) | **Clyde M. Siebman**<br>Texas Bar No. 18341600<br>clydesiebman@siebman.com<br>**Elizabeth S. Forrest**<br>Texas Bar No. 24086207<br>elizabethforrest@siebman.com<br>**SIEBMAN, FORREST, BURG & SMITH, LLP**<br>Federal Courthouse Square<br>300 N. Travis Street<br>Sherman, Texas 75090<br>(903) 870-0070 (Telephone)<br>(903) 870-0066 (Telecopy)<br><br>**Attorneys for Defendants** |

## CERTIFICATE OF SERVICE

I hereby certify that on December 10, 2018 the foregoing pleading was filed with the clerk of the court for the U.S. District Court, Eastern District of Texas, using the electronic case filing system of the court. The electronic case filing system sent a "Notice of Electronic Filing" to all attorneys of record who have consented in writing to accept this Notice as service of documents by electronic means.

/s/   *Gregory N. Ziegler*
**Gregory N. Ziegler**