# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| PERFORMANCE PULSATION CONTROL, INC., | § § § § | |
| v. | § § | Civil Action No. 4:17-CV-00450 |
| SIGMA DRILLING TECHNOLOGIES, LLC, INTREPID CONSULTING, LLC, JUSTIN MANLEY, ALLISON MANLEY, WILLIAM GARFIELD, ADVANCE RUPTURE DISK TECHNOLOGY, INC., | § § § § § § § | Judge Mazzant |

## MEMORANDUM OPINION AND ORDER

Pending before the Court are Justin Manley & William Garfield's ("Moving Defendants") Motion for Partial Summary Judgment ("Motion for Summary Judgment") (Dkt. #167), Defendants' Motion for Leave to File Supplemental Evidence in Support of Manley and Garfield's Motion for Partial Summary Judgment ("Motion for Leave") (Dkt. #240), and Defendants' Supplemental Brief in Support of Manley and Garfield's Motion for Partial Summary Judgment ("Supplemental Motion") (Dkt. #241). After reviewing the relevant pleadings and motions, the Court finds the Motion for Summary Judgment should be granted and the Motion for Leave and Supplemental Motion should be denied as moot.

### BACKGROUND

Plaintiff Performance Pulsation Control, Inc. ("PPC") alleges that the Moving Defendants are both former employees. While employed with PPC, the Moving Defendants each signed an employee handbook. The Employee Handbook contains the following relevant language:

**101 Nature of Employment**
Effective Date: 12/1/2010

Employment with PPC is entered into voluntarily and, absent terms in a written contract signed by you and PPC, both are free to end the employment relationship at any time, for any reason, with or without cause or advance notice so long as there is no violation of applicable federal or state law.

Policies set forth in this handbook are not intended to create a contract, nor are they to be construed to constitute contractual obligations of any kind or a contract of employment between PPC and any of its employees. The provisions of the handbook have been developed at the discretion of management and, except for its policy of employment-at-will, may be amended or cancelled at any time, at PPC's sole discretion.

These provisions supersede all existing policies and practices and may not be amended or added to without the express written approval of the chief executive officer of PPC.

. . .

**110 Outside Employment**
Effective Date: 12/1/2010

Employees may hold outside jobs as long as they meet the performance standards of their job with PPC. All employees will be judged by the same performance standards and will be subject to PPC's scheduling demands, regardless of any existing outside work requirements.

If PPC determines that an employee's outside work interferes with performance or the ability to meet the requirements of PPC as they are modified from time to time, the employee may be asked to terminate the outside employment if he or she wishes to remain with PPC.

Outside employment that constitutes a conflict of interest is prohibited. Employees may not receive any income or material gain from individuals outside PPC for materials produced or services rendered while performing their jobs.

. . .

**112 Non-Disclosure**
Effective Date: 12/1/2010

The protection of confidential, proprietary and trade secret business information is vital to the interests and the success of PPC. Such confidential information includes, but is not limited to, the following examples:

- Design Drawings And Specifications
- Fixtures And Fabrication Techniques
- Computer Programs And Codes
- Customer Lists
- Customer Preferences
- Vendor Lists
- Employee Lists And Information
- Financial Information
- Marketing Strategies
- Pending Projects And Proposals
- Research And Development Strategies

As a condition of continued employment, you agree to strictly maintain the confidentiality of all such information. Depending upon your responsibility and access to confidential information within PPC, you may be required to sign an additional employee confidentiality agreement and non-circumvention agreement. Employees who improperly use or disclose trade secrets or confidential business information will be subject to disciplinary action, up to and including termination of employment, even if they do not actually benefit from the disclosed information. In light of the irreparable harm and inadequate remedy at law that results from a violation of the terms of this provision, you agree that a court of competent jurisdiction may enter a Temporary Restraining Order against you, without the necessary of a bond, to maintain the status quo, pending a hearing on a Temporary Injunction.

. . .

**517 Internet Usage**
Effective Date: 12/1/2010

. . .

The unauthorized use, installation, copying, or distribution of copyrighted, trademarked, or patented material on the Internet is expressly prohibited, even if for personal use. As a general rule, if an employee did not create material, does not own the rights to it, or has not gotten authorization for its use, it should not be put on the Internet. Employees are also responsible for ensuring that the person sending any material over the Internet has the appropriate distribution rights.

(Dkt. #166, Exhibit C at pp. 9, 11–12, 29). Furthermore, each of the Moving Defendants signed the PPC Employee Handbook Acknowledgment of Receipt, which in relevant part states:

I have entered into my employment relationship with PPC voluntarily and acknowledge that there is no specified length of employment. Accordingly, in the

> absence of a written contract of employment for a term certain, either I or PPC can terminate the relationship at will, with or without cause, at any time, so long as there is no violation of applicable federal or state law.
>
> . . .
>
> Furthermore, I acknowledge that this Employee Handbook is neither a contract of employment nor a legal document. I have received the Employee Handbook, and I understand that it is my responsibility to read and comply with the policies contained in this Employee Handbook and any revisions made to it.
>
> . . .
>
> I consent to and acknowledge my responsibility for compliance with the terms and conditions of this Employee Handbook.

(Dkt. #166, Exhibit A; Dkt. #166, Exhibit B).

PPC alleges that, in spite of the Employee Handbook, Moving Defendants misappropriated PPC's trade secrets and confidential information while employed with PPC. Moreover, PPC maintains that Moving Defendants formed a competing company, Sigma Drilling Technologies, LLC ("Sigma"), to market and sell pulsation control products that were developed within the course of their employment with PPC. Finally, PPC maintains that Moving Defendants failed to return or destroy PPC's confidential and proprietary information from his personal electronic devices. As a result of this conduct, among other allegations, PPC filed suit against Moving Defendants for breach of contract, among other causes of action.

On July 16, 2018, Moving Defendants filed the present partial motion for summary judgment asking the Court to dismiss PPC's breach of contract claim against the Moving Defendants (Dkt. #167). PPC responded to the motion on August 6, 2018 (Dkt. # 173). On August 10, 2018, Moving Defendants filed their reply to the motion (Dkt. # 177). No sur-reply was filed; however, on November 27, 2018, Moving Defendants filed the present Motion for Leave (Dkt. #240) and Supplemental Motion (Dkt. #241). On December 10, 2018, PPC field a response

in opposition to the Motion for Leave arguing the Supplemental Motion should not be allowed (Dkt. #272).

## LEGAL STANDARD

The purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). Summary judgment is proper under Rule 56(a) of the Federal Rules of Civil Procedure "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A dispute about a material fact is genuine when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986). Substantive law identifies which facts are material. *Id.* The trial court "must resolve all reasonable doubts in favor of the party opposing the motion for summary judgment." *Casey Enters., Inc. v. Am. Hardware Mut. Ins. Co.*, 655 F.2d 598, 602 (5th Cir. 1981).

The party seeking summary judgment bears the initial burden of informing the court of its motion and identifying "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" that demonstrate the absence of a genuine issue of material fact. FED. R. CIV. P. 56(c)(1)(A); *Celotex*, 477 U.S. at 323. If the movant bears the burden of proof on a claim or defense for which it is moving for summary judgment, it must come forward with evidence that establishes "beyond peradventure *all* of the essential elements of the claim or defense." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). Where the nonmovant bears the burden of proof, the movant may discharge the burden by showing that there is an absence of evidence to support the nonmovant's case. *Celotex*, 477 U.S. at 325; *Byers v. Dall. Morning News, Inc.*, 209 F.3d 419, 424 (5th Cir. 2000). Once the movant has carried its burden, the

nonmovant must "respond to the motion for summary judgment by setting forth particular facts indicating there is a genuine issue for trial." *Byers*, 209 F.3d at 424 (citing *Anderson*, 477 U.S. at 248–49). A nonmovant must present affirmative evidence to defeat a properly supported motion for summary judgment. *Anderson*, 477 U.S. at 257. Mere denials of material facts, unsworn allegations, or arguments and assertions in briefs or legal memoranda will not suffice to carry this burden. Rather, the Court requires "significant probative evidence" from the nonmovant to dismiss a request for summary judgment. *In re Mun. Bond Reporting Antitrust Litig.*, 672 F.2d 436, 440 (5th Cir. 1982) (quoting *Ferguson v. Nat'l Broad. Co.*, 584 F.2d 111, 114 (5th Cir. 1978)). The Court must consider all of the evidence but "refrain from making any credibility determinations or weighing the evidence." *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007).

## ANALYSIS

Moving Defendants seek dismissal of PPC's breach of contract claims against them arguing the contract does not exist, and even if it did exist, the contract is unenforceable because it is illusory. Moving Defendants argue that the express terms of the Employee Handbook state that it is not a contract and therefore PPC cannot sue for breach of contract, based on the Employee Handbook. PPC responds that there is a valid and enforceable contract that the Moving Defendants breached or, at the very least, there is a genuine issue of material fact surrounding the issue.

To decide this issue, the Court must engage in contract interpretation. As stated by the Fifth Circuit,

> "[i]n the context of contract interpretation, only when there is a choice of reasonable interpretations of the contract is there a material fact issue concerning the parties' intent that would preclude summary judgment." Under Texas law,[1] the

---

[1] The Fifth Circuit in this case applied Texas contract law because it was a case sitting in diversity jurisdiction. *Gonzalez v. Denning*, 394 F.3d 388, 392 (5th Cir. 2004). Here, the Court has federal question jurisdiction with

interpretation of an unambiguous contract is a question of law for the court to decide by "looking at the contract as a whole in light of the circumstances present when the contract was entered." "If a written contract is so worded that it can be given a definite or certain legal meaning, then it is not ambiguous." If, however, the language of the contract is subject to two or more reasonable interpretations or meanings, it is ambiguous. "A contract is not ambiguous merely because the parties to an agreement proffer conflicting interpretations of a term." Under Texas law, "[t]he primary concern of a court construing a written contract is to ascertain the true intent of the parties as expressed in the instrument." "In construing a contract under Texas law, courts must examine and consider the entire writing and give effect to all provisions such that none are rendered meaningless." "The terms used in the [contract] are given their plain, ordinary meaning unless the [contract] itself shows that the parties intended the terms to have a different, technical meaning."

*Gonzalez v. Denning*, 394 F.3d 388, 392 (5th Cir. 2004) (citations omitted).

As such, the Court interprets the Employee Handbook to ascertain the intent of the parties as written. The Employee Handbook says: "Policies set forth in this handbook are not intended to create a contract, *nor are they to be construed to constitute contractual obligations of any kind* or a contract of employment between PPC and any of its employees." (Dkt. #166, Exhibit C at p. 9) (emphasis added). PPC maintains that this language was intended to maintain at-will employment, while binding the employees to the policies set forth in the Employee Handbook. The Court agrees that some of the language in the Employee Handbook expresses the intention to maintain at-will employment; however, PPC decided to add the broad disclaimer that the policies in the handbook are not to be "construed to constitute contractual obligations of any kind." (Dkt. #166, Exhibit C at p. 9). This language unambiguously goes far beyond simply maintaining at-will employment.

---

supplemental jurisdiction over state law claims; however, no party disputes that Texas contract law applies to this state law cause of action against Advanced.

The Court acknowledges that it is to look at the writing as a whole, instead of looking at one clause in isolation. The remainder of the Employee Handbook supports the conclusion, that while employees are expected to observe the policies in the Employee Handbook, the policies do not create contractual obligations. First, the Acknowledgment that Moving Defendants signed stated that employees must "read and comply with the policies contained in the Employee Handbook" but also made clear that it was not a "contract of employment nor *a legal document*." Again, while PPC does make clear that employment is at-will and the Employee Handbook does not create an employment contract, it goes the extra step to indicate that the Employee Handbook is not a legal document, supporting the contention that the policies contained in the Employee Handbook did not create a contract. Moreover, the Employee Handbook indicates that violations of certain provisions will result in "disciplinary action, up to and including termination of employment" or also if there is a violation of the outside employment policy "the employee may be asked to terminate the outside employment if he or she wishes to remain with PPC." (Dkt. #166, Exhibit C at pp. 9, 11–12). It does not indicate that failure to comply is a breach of contract and could result in any civil liability for breach of that contract.[2] The unambiguous construction of the Employee Handbook is that the policies contained therein did not create a contract.[3] PPC may not now claim that was not what they intended because having the policies serve as a contract benefits PPC. The Court finds that PPC should not be allowed to sue for a breach of this non-contract.

Because the Court finds that the Employee Handbook[4] does not constitute a contract, the Court need not address whether the "contract" is illusory. Moreover, because the Court was able

---

[2] The Court acknowledges that the Employee Handbook does state that if an employee is improperly disclosing trade secrets or confidential information, PPC may seek a temporary restraining order, to maintain the status quo, until a temporary injunction could be issued, but do not indicate that the disclosure would be a breach of contract.

[3] The Court does not hold that there is no obligation created under the Employee Handbook, but merely holds it was not a contractual obligation.

[4] PPC also identifies, in its response to the motion, that Justin Manley entered into separate Confidentiality Agreements in relation to specific projects. Moving Defendants protest to these separate agreements serving as a basis for the

8

to make this determination with the evidence presented in the initial briefing, the Court finds it unnecessary to consider the Motion for Leave or Supplemental Motion.[5]

## CONCLUSION

It is therefore **ORDERED** that Justin Manley & William Garfield's ("Moving Defendants") Motion for Partial Summary Judgment (Dkt. #167) is hereby **GRANTED**. As such, Plaintiff's breach of contract claims against Justin Manley and & William Garfield are hereby **DISMISSED WITH PREJUDICE**.

It is further **ORDERED** that Defendants' Motion for Leave to File Supplemental Evidence in Support of Manley and Garfield's Motion for Partial Summary Judgment (Dkt. #240) and Defendants' Supplemental Brief in Support of Manley and Garfield's Motion for Partial Summary Judgment (Dkt. #241) are hereby **DENIED**.

**SIGNED this 11th day of March, 2019.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE

---

breach of contact claims because: (1) these two agreements were not pleaded and the sole basis for breach of contract against Justin Manley was based on the Employee Handbook; and (2) these projects are irrelevant as identified by PPC in previous pleadings and discovery responses in this litigation. The Court finds that PPC should not now be able to claim a breach of contract claim based on these separate confidentiality agreements.

[5] Moving Defendants to summary judgment evidence attached to PPC's response; however, because the Court finds in Moving Defendants' favor regardless, the Court overrules the objections.